## Dewar, Appellant, *v.* Carson.

*Deeds—Building restrictions—Covenants—Car tracks and poles.*

Where the deeds to a number of lots abutting on a street in a residential district provide that "no dwelling house or other building of any kind shall ever be erected or placed on said lot within 20 feet" of the street and that "a space of 20 feet shall always be open and clear of buildings or parts of buildings whatsoever" and the owners by a supplemental agreement duly recorded, increase the space to 40 feet and covenant with each other "not to build or erect or suffer to be built or erected a building of any character whatever" in such space, a street railway company which has purchased two of the lots will be enjoined from lowering the grade of its lots within the restricted space and erecting poles and laying tracks for a loop, on which street cars of large dimensions would pass or stand during any hour of the day or night.

Restrictions are to be construed most strongly against the grantor. They should also be conformable if possible, to the letter and the obvious intent of the grant. All rules of construction are simply means to a given end, by those methods of reason which experience has taught are best calculated to lead to the intention, and generally no rule will be adopted to defeat the intention. Whatever may have been the earlier doctrine, it is now thoroughly settled that technical rules of construction are not favored, and should not be applied so as to defeat the fair intention of the parties.

Argued May 3, 1917. Appeal, No. 195, April T., 1917, by plaintiff, from decree of C. P. Allegheny Co., Oct. T.,

1916, No. 1733, dismissing bill in equity in case of John Dewar v. W. B. Carson, Pittsburgh Railways Company, The Federal Street and Pleasant Valley Passenger Railway Company and George R. Bothwell and John Carson, partners trading as Bothwell & Carson. Before OR-LADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREX-LER and WILLIAMS, JJ. Reversed.

Bill in equity for an injunction.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree dismissing the bill.

*M. W. Acheson, Jr.,* with him *Sterrett & Acheson,* for appellant.—The permanent putting together of materials on and in the land for any use creates a "Building." A railway is uniformly regarded as a "building" in this class of cases: Long Eaton Recreation Grounds Co., Ltd., v. Midland Ry. Co., 2 Law Rep. 574; Clement's Administration v. Putnam, 35 Atlantic Rep. 181; Mc-Gillick v. Hasley, 16 Pa. Dist. 44; Flynn v. N. Y. W. & B. Ry. Co., 218 N. Y. 140; Realty Co. v. Kellogg, 85 Misc. (N. Y.) 598; Wright v. Evans, 2 Abbotts Prac. N. S. 308; Swasey v. Shasta County, 141 Cal. 392; Hardin v. State, 138 N. W. 146; Landell v. Hamilton, 175 Pa. 327; Weiss v. Swift, 36 Pa. Superior Ct. 376; Chesapeake, Etc., Ry. Co. v. American Exchange Bank, 92 Va. 495; Warren Borough v. Geer, 117 Pa. 207.

*Edwin W. Smith,* of *Reed, Smith, Shaw & Beal,* for appellees.—A building restriction, such as the one in question, is lawful and enforceable but it is not favored by the law as being an interference with the owner's free and full use of his property, and the restriction will not be extended by implication: Crofton v. St. Clements Church, 208 Pa. 209; McCloskey v. Kirk, 243 Pa. 319; St. Andrew's Lutheran Church's App., 67 Pa. 512; Gil-

more v. Times Pub. Co., 18 Pa. Superior Ct. 363; Asbury v. Carroll, 54 Pa. Superior Ct. 97; Hamnett v. Born, 247 Pa. 418; McGillick v. Hasley, 16 Pa. Dist. Rep. 44; Nowell v. Boston Academy, 130 Mass. 209; Society of Concinnati's App., 154 Pa. 621; Parsons v. Van Wyck, 67 N. Y. Supp. 1054; Rouse v. Catskill, Etc., Boat Co., 13 N. Y. Supp. 126; Clark v. Lee, 185 Mass. 223; People v. Richards, 108 N. Y. 137.

OPINION BY ORLADY, P. J., July 13, 1917:

The court below refused to grant an injunction, and dismissed the plaintiff's bill seeking to enjoin the defendants from erecting or placing railroad tracks, rails, ballast and ties, or any other buildings on lots owned by them, alleged to be in violation of building restrictions and covenants set out at length in the title of the defendant.

The plaintiff is the owner of two adjoining lots, having a frontage of 150 feet on the northern side of California avenue, in the City of Pittsburgh. Two adjoining lots are owned by the Pittsburgh Railways Company (the legal title being vested in W. B. Carson), having a frontage of 100 feet on the same avenue. These lots extend northward 140 feet to an alley. The deeds by which the respective parties acquired and now hold title contain the following building restrictions, set out at length in the deeds from the Ridgeview Land Company, and are now binding on the present holders of the title, as follows: "The above described lots of ground are conveyed by the party of the first part, and purchased and accepted by the party of the second, for himself, his heirs and assigns, subject to the covenant and condition running with the land, and part of the consideration hereof, that no dwelling house or other building of any kind, shall ever be erected or placed on said lot within twenty (20) feet of the line of California avenue, but that a space of twenty (20) feet, as aforesaid, shall always be left open and clear of all buildings, or parts of buildings

whatsoever; and further, that no buildings shall be erected on either of said lots of a less cost or value than five thousand dollars; and for any violation of this agreement, the Ridgeview Land Company, or any owner or owners of property situate in said company's plan, are hereby authorized to proceed in any court of law or equity, by injunction or otherwise, to enforce the performance of this agreement, or restrain this violation, and shall have the right to collect from the party violating this agreement, all costs, expenses, counsel fees and damages incurred in said proceedings, or resulting from a violation of this agreement."

The railways company being the owner of the corner lots (39 and 40), at California avenue and Wynhurst street, declared their purpose to change the grade of these lots so as to be eight (8) feet below the present elevation of plaintiff's adjoining lots, and to "place thereon, in the form of a loop, tracks over and along which cars may be operated and allowed to stand; said tracks to be laid on ties supported by ballast, and said cars to be operated in the usual manner by the use of poles, wires and electricity," so as to be a part of the defendant's general system of street railways service. The street railways company purchased lots 39 and 40 from Charles W. Dahlinger, at a time when there was of record an agreement between Dahlinger and Dewar, this plaintiff, and other owners of adjoining property, dated October 16, 1894, recorded June 11, 1895, and of which they had actual knowledge, as follows: "Whereas, Lucy E. Meyer, of the City of Allegheny, County of Allegheny and State of Pennsylvania is the owner of a certain lot in the Grande Pointe Plan of Lots recorded in Plan Book, Vol. XII, pages 58 and 59, situate on the northeasterly side of California Avenue, Allegheny, Penna.

"And Whereas, we the undersigned own adjacent and adjoining lots upon the same side of said street. And Whereas, we are desirous of having all buildings hereafter to be erected upon our said lots to be built a uni-

form distance of forty feet (40) from said street or avenue aforesaid (said distance to be measured from the line of California Avenue to the front line of said building).

"Now Therefore in consideration of said Lucy Meyers erecting upon her said lot buildings which she is about to erect at the distance aforesaid from the street or avenue aforesaid, and in consideration of the premises, We the undersigned, our heirs and assigns, hereby agree not to build or erect or suffer to be built or erected a building of any character whatever in that portion of our said lots lying between said avenue and the building line herein provided for.

"In Witness Whereof, we the said parties to this agreement have set our hands and seals this 16 day of October, A. D. 1894."

Signed by Chas. W. Dahlinger (defendant's predecessor in title), John Dewar (this plaintiff) and eight owners of property in the block.

It must be conceded that the use to which the railways company intend to apply these lots (39 and 40), was not reasonably in contemplation of any of the parties interested in the original plan of lots, or when the building line was fixed at forty (40) feet distant from the street. The purpose at that time, as expressed in the agreement between Lucy E. Meyer and Dahlinger et al., was that all buildings hereafter to be erected should have a uniform frontage 40 feet distant from the street, and each of the then owners agreed not to build, erect or suffer to be built or erected a building of any character whatever, in that portion of the lots between said avenue and the building line provided for. A common sense construction of this agreement could mean only that this space between the building line and the avenue would be free and unobstructed, whether by building of any design or other encroachment to interfere with the view, passage of air, or to effect the uniformity of the common undertaking. It was intended as a residential section. The original reservation provided, by deed July 1, 1892, "That no dwell-

ing house or other buildings of any kind, shall ever be erected or placed on said lot within 20 feet of the line of California Ave., but that a space of 20 feet, as aforesaid, shall always be left open and clear of all buildings, or parts of buildings whatsoever." The supplemental agreement of the then owners of October 16, 1894, changed this building line from 20 feet to a "uniform distance of 40 feet from said street or avenue."

It is conceded that the language of a deed should be interpreted in the light of the apparent object or purpose of the parties and of the conditions existing when made. Murphy v. Ahlberg, 252 Pa. 267. The only question is, whether the restriction is to be interpreted to prohibit the erection and maintenance of poles, wires and tracks for use of moving and standing street cars within this restricted space. The natural grade of the lot is materially changed to adapt it for street car purposes, and the adjoining property is protected by a concrete retaining wall. While this of itself may not interfere with light or view, it is certainly a very marked change in the front yard effect of residences fronting on California avenue, and is to be considered with the other changes suggested by the railways company which implies the erection of poles 20 feet high, a system of over-head wires, surface tracks on which modern street cars, 11 to 12 feet high and 45 feet long, are entitled to pass or stand during any hour of the day or night, not only obstructing view, but introducing necessary noises caused by the use of the street railway.

The object to be secured was to have a clear, unobstructed space 40 feet wide, and to have it encumbered with the suggested objects, would defeat the very purpose of the restriction. Restrictions are to be construed most strongly against the grantor. They should also be conformable if possible, to the letter and the obvious intent of the grant. All rules of construction are simply means to a given end, by those methods of reason which experience has taught are best calculated to lead to the inten-

tion, and generally no rule will be adopted to defeat the intention. Whatever may have been the earlier doctrine, it is now thoroughly settled that technical rules of construction are not favored, and should not be applied so as to defeat the fair intention of the parties. The inquiry is not, as to the meaning of the words used in strict legal contemplation, but as to the sense in which the parties use them. In seeking the latter, words will be accorded their common rather than their technical meaning. The evident intention of the parties to this building operation was, that it should apply not only to the dates of the respective writings, but to the subsequent use and improvement of the properties, and while the word "building" would not mean a pole, wire, rails or cars of a street car company, it is but reasonable to hold, that a combination of these materials and appliances might be made so as to be clearly within the prohibited construction to interfere with light, ventilation and uniformity. A car barn would be clearly such a construction. The added and necessary accessories to it might be just as objectionable. There is a substantial difference to be found in the decisions, as noted in 13 Cyc., title, Deeds; 1 Words and Phrases, second series, title, Buildings; 8 R. C. I., title, Deeds; O'Gallagher v. Lockart, 52 L. R. A. (N. S.), 1044. In all the definitions the nature of the use and the character of the construction are fair subjects engaging the attention of the parties. The improvement contemplated by the defendants involves a material change of the surface grade, a permanent erection of solid materials, poles and wires, netted together to be used as a part of a general street system, and the occupancy of the surface tracks by cars in motion or at rest according to the will of the owner, and with such frequency as their business requires.

By whatever name this development may be called, it is reasonably within the intended prohibition of the grant, and is in violation of the original restriction, as well as that of the agreement of Meyer v. Dahlinger et

Opinion of Court below.   [67 Pa. Superior Ct.

al , above quoted, by which the then owners agreed "not to build or erect or suffer to be built or erected a building of any character whatever in that portion of our said lots lying between said avenue and the building line herein provided for." They could have used additional words, but their meaning could not have been made any plainer in declaring their intention, that the space between the building line and the avenue should be kept permanently free and clear of any character of construction; as declared in the deed from the land company to John Dewar, above quoted, "that a space of 20 feet, as aforesaid, shall always be left open and clear of all buildings, or parts of buildings whatsoever."

For the reasons above stated, the decree entered by the court below is reversed, the record is remitted and bill reinstated and to be proceeded in according to the rules of equity practice in the courts of Pennsylvania.