# Dewar *v.* Carson et al., Appellants.

*Deeds—Building restrictions—Building line—Covenants — Construction—Intention—Restricted space — Lowering grade — Erection of poles—Laying of street railway tracks—Bill in equity—Injunction.*

1. While building restrictions are enforceable, they are not favored by the law, and covenants relating to them are not to be extended by implication.

2. Words contained in a building restriction in a deed are to be interpreted in the light of the manifest object or purpose of the

parties in using them. The meaning and extent of the building restrictions which were within the contemplation of the parties at the time it was imposed must prevail.

3. Where the deeds to a number of lots abutting on a street in a residential district provide that "no dwelling house or other building of any kind shall ever be erected or placed on said lot within twenty feet" of the street and that "a space of twenty feet shall always be open and clear of buildings or parts of buildings whatsoever" and the owners by a supplemental agreement duly recorded, increase the space to forty feet and covenant with each other "not to build or erect or suffer to be built or erected a building of any character whatever" in such space, a street railway company which has purchased two of the lots will be enjoined from lowering the grade of its lots within the restricted space and erecting poles and laying tracks thereon for a loop, on which street cars of large dimensions would pass or stand during any hour of the day or night.

Argued Oct. 16, 1917. Appeal, No. 147, Oct. T., 1917, by defendants, from judgment of Superior Court, April T., 1917, No. 195, reversing decree of C. P. Allegheny Co., Oct. T., 1916, No. 1733, dismissing bill in equity for injunction in case of John Dewar v. W. B. Carson, Pittsburgh Railways Company, The Federal Street & Pleasant Valley Passenger Railway Company, and George R. Bothwell and John Carson, Partners, trading as Bothwell & Carson. Before Brown, C. J., Potter, Moschzisker, Frazer and Walling, JJ. Affirmed.

Appeal from the Superior Court. Before Orlady, P. J.

The facts appear by the opinion of the Supreme Court and in 67 Pa. Superior Ct. 527.

The Superior Court reversed the decree of the lower court dismissing the bill. Defendants appealed.

*Error assigned,* among others, was the decree of the Superior Court.

*Edwin W. Smith,* with him *Reed, Smith, Shaw & Beal,* for appellant.—Building restrictions should not be extended by implication: Crofton v. St. Clement's Church,

208 Pa. 209; McCloskey v. Kirk, 243 Pa. 319; St. Andrew's Lutheran Church's App., 67 Pa. 512; Gilmore v. Times Publishing Co., 18 Pa. Superior Ct. 363; Landell v. Hamilton, 175 Pa. 327; Asbury v. Carroll, 54 Pa. Superior Ct. 97; Nowell v. Boston Academy, 130 Mass. 209; Van Banman v. Gallagher, 182 Pa. 277; Appeal of State Society of Cincinnati, 154 Pa. 621.

*M. W. Acheson, Jr.,* of *Sterrett & Acheson,* for appellee.—The purpose of the building restriction in question was to preserve the residential district of the parties from the intrusion of business: Landell v. Hamilton, 175 Pa. 327; Prendergast v. Walls, 257 Pa. 547.

The permanent putting together of materials on the land for any use creates a "building": The Long Eaton Recreation Grounds Co. v. Midland Ry. Co., 2 Law Reports K. B. Div. 574; Luhman v. New York W. & B. Ry., 142 N. Y. S. 860; Clement's Administrator v. Putnam, 35 Atl. Repr. 181; McGillick v. Hasley, 16 Pa. Dist. Reports 44; Mecca Realty Co. v. Kellogg Co., 85 Misc. (N. Y.) 598; Wright v. Evans, 2 Abbotts Practice Reports N. S. 308; Swasey v. Shasta County, 141 Cal. 392; Pennsylvania Steel Co. v. Potts Salt & Lumber Co. et al., 63 Fed. 11.

OPINION BY MR. CHIEF JUSTICE BROWN, January 7, 1918:

John Dewar and the Pittsburgh Railways Company are the owners of adjoining lots situated on the north side of California avenue, in the City of Pittsburgh. The frontage of the Dewar ground is one hundred and fifty feet and that of the railways company one hundred feet. The properties extend one hundred and forty feet northward to an alley. They form part of a duly recorded plan of lots, and the title to each of them is subject to the following covenant and condition running with the land, as part of the consideration therefor: "The above described lots of ground are conveyed by the party of the

first part, and purchased and accepted by the party of
the second part, for himself, his heirs and assigns, sub-
ject to the covenant and condition running with the land,
and part of the consideration hereof, that no dwelling
house or other building of any kind, shall ever be erected
or placed on said lot within twenty feet of the line of
California avenue, but that a space of twenty feet, as
aforesaid, shall always be left open and clear of all build-
ings, or parts of buildings whatsoever"; and then fol-
lows a provision authorizing any owner or owners of
property located on the plan to proceed in any court of
law or equity, by injunction or otherwise, to enforce the
performance of the covenant or restrain its violation.
On October 16, 1894, before the railways company ac-
quired title, its grantor and other owners of lots in the
same square entered into an agreement, which was duly
recorded, changing the building line from twenty feet to
a uniform distance of forty feet from the north line of
California avenue. The bill filed by the complainant
was for an injunction to restrain the railways company
from violating the building restriction imposed upon its
lots. Its declared purpose, as found by the court below
at the time this proceeding was instituted, was "to grade
said lots 39 and 40 to the approximate level of California
avenue and Wynhurst street, and to place thereon, in the
form of a loop, tracks over and along which cars may be
operated and allowed to stand; said tracks to be laid on
ties supported by ballast, and said cars to be operated in
the usual manner, by the use of poles, wires and elec-
tricity." The grade to which the railways company pro-
posed to reduce its lots is approximately eight feet be-
low the natural elevation of them and the adjoining lots.
The bill was dismissed on the ground that what the rail-
ways company proposed to do was not in violation of the
building restriction. On appeal to the Superior Court
this was reversed, and the bill was reinstated with a pro-
cedendo, that court having been of opinion that the pro-
posed action of the railways company would be in viola-

tion of the restriction: Dewar v. Carson et al., 67 Pa. Superior Ct. 527. From this the railways company has appealed.

While building restrictions are enforceable, they are not favored by the law, and covenants relating to them are not to be extended by implication: St. Andrew's Lutheran Church's App., 67 Pa. 512; Crofton v. St. Clement's Church, 208 Pa. 209; McCloskey v. Kirk, 243 Pa. 319. The error into which the learned court below fell was in holding that the covenant in the railways company's deed would be extended by implication if it should be restrained from erecting or placing railroad tracks, rails, poles and ties on its lots. Under the pleadings and proofs, the question was not one of extending a covenant by implication, but was as to the meaning to be given to its express terms. The covenant in the railways company's deed, read in connection with the agreement of October 16, 1894, is that the space of forty feet north from the line of California avenue "shall always be left open." These words are to be interpreted in the light of the manifest object or purpose of the parties in using them: Meigs v. Lewis, 164 Pa. 597; Landell et al. v. Hamilton et al., 175 Pa. 327; Murphy v. Ahlberg et al., 252 Pa. 267; and the meaning and extent of the building restriction which were within the contemplation of the parties at the time it was imposed must prevail.

In view of three findings of the court below, which were not excepted to there, and cannot, therefore, be disturbed here, clear error was committed in dismissing plaintiff's bill. After describing his lots and those of the defendant, the court proceeded to find as follows: "Both of said properties are in a residence district." "In said forty-foot strip upon said lot next the plaintiff's said property and commencing about seven or eight feet westwardly therefrom, the defendant, Pittsburgh Railways Company, proposes to install tracks (consisting of rails, ties and ballast), poles about twenty feet high

above ground, and a system of wires for electric traction, together with street cars eleven to twelve feet high and forty-five feet long, which, with and without passengers, are to be hauled by said railways company over said tracks day and night and also stored thereon." "By means of the requirement that all buildings or parts of buildings shall be forty feet back from the street, the parties to said restriction, for themselves, their heirs and assigns, sought to protect and preserve the lots in said plan (including those now belonging to the parties to this suit), for residential purposes." The situation is thus concisely and aptly summed up by the learned president judge of the Superior Court: "The improvement contemplated by the defendants involves a material change of the surface grade, a permanent erection of solid materials, poles and wires, netted together to be used as a part of a general street system, and the occupancy of the surface tracks by cars in motion or at rest according to the will of the owner, and with such frequency as their business requires." To permit the railways company to install on the front of its lots "tracks (consisting of rails, ties and ballast), poles about twenty feet high above ground, and a system of wires for electric traction, together with street cars eleven to twelve feet high and forty-five feet long, which, with and without passengers, are to be hauled by said railways company over said tracks day and night and also stored thereon," would defeat the very purpose of the building restriction, which, as found by the court below, was "to protect and preserve the lots for residential purposes." This is too plain for further comment, and that portion of the lot shall, in the words of the covenant, "always be left open," in the sense in which the parties to the covenant used them, "to protect and preserve the lots for residential purposes."

The assignments of error on this appeal are overruled, and the decree of the Superior Court is affirmed, at the cost of the appellants.