# Butcher *versus* Yocum.

1. It is not essential that notice of an equitable interest should come from the party or his agent, it may come *aliunde*, provided it be of a character likely to gain credit.

2. A party about to purchase from a widow real estate, the legal title of which was in her, was informed by the grandfather of her minor children that the equitable title had been in the deceased husband and was then in his heirs. *Held*, that the grandfather was a proper person to give notice and the party having afterwards purchased was affected by it.

February 19th 1869.   Before THOMPSON, C. J., READ, SHARSWOOD and WILLIAMS, JJ.   AGNEW, J., at Nisi Prius.

Error to the District Court of *Philadelphia*: No. 157, to January Term 1869.

This was an action of ejectment brought, November 7th 1861, by Edmund G. Yocum against Daniel Trout for one-half of a lot of ground and two houses in Philadelphia.   Samuel Butcher was afterwards admitted to defend as landlord.

On the trial below the plaintiff gave evidence of the conveyance of the whole property on the 29th of September 1838 to Benjamin Lee, subject to a ground-rent of $36.   He then offered to prove that Lee and William Silvey were partners, and entered into a contract with James Yocum, who was a carpenter, to build a house for them, and receive the lot in controversy in consideration.   The offer was objected to by the defendant, admitted by the court and a bill of exceptions sealed.   The plaintiff then showed by a witness that Lee and Silvey were partners in 1842, and agreed in writing with Yocum to build a house for them; that witness saw the agreement in 1842 in presence of the parties.   Yocum had a copy; witness never saw it since.   Plaintiff read Silvey's testimony from Judge Sharswood's notes at a former trial, under objection to their relevancy and exception by the defendant.

Silvey testified that he and Lee made a contract in writing with Yocum to put up a building for them; the last time witness saw the contract was when settlement was made between witness and Lee, who then took it.   Lee died about 1857.   Yocum was to take the lot for $500 in payment of the building; the lot was owned by both, but the deed was in Lee's name.   Yocum went into possession at the time of the contract, and continued in possession until his death in 1846.   Mrs. Yocum, the widow, testified that the contract was in Yocum's possession at his death, his desk was broken open after his death, and the paper was lost.   The defendant objected to evidence of the contents of the paper, the objection was overruled and a bill of exceptions sealed.   Plaintiff then gave evidence that Yocum was to take the lot, subject to the ground-rent, &c., for building the house; he did build the house; the deed was to lie in Lee's hands till the house was finished, and the

[Butcher *v.* Yocum.]

liens released.   There was other evidence of Yocum's possession. Yocum left a widow and two children, one of whom died after him, leaving the plaintiff surviving.   The defendant gave in evidence a deed of the whole premises, dated January 6th 1847, from B. Lee to Margaret Yocum, the widow of James Yocum, and deed of the same premises, dated January 3d 1848, from Mrs. Yocum to Samuel Butcher, together with other evidence in support of his title.   The plaintiff in rebuttal called Joseph Huston, the father of Mrs. Yocum, who testified that Butcher in 1847 told witness that he had been urged to buy the property; that it had been advertised for sale by an agent of Mrs. Yocum; witness told Butcher that Mrs. Yocum had no right to sell; the property was not hers; it was the property of her husband who was dead, it fell to his children, and could not be sold from them.   W. Haas testified that after Butcher had bought, witness told him that Mrs. Yocum could not sell, and that a good title could not be made, except through the Orphans' Court, and advised Butcher not to build.

The evidence having been closed, the defendant requested the court to charge the jury, that there is no sufficient evidence of notice to Butcher, and that if the jury believe that Mrs. Yocum executed the deed to Butcher, and he paid the full value of the property, the defendant is entitled to the verdict.   This proposition the court refused to affirm, but told the jury, that if they should find, from the evidence, that Joseph Huston was the grandfather of Edmund G. Yocum, the plaintiff, and that before Butcher bought the property, he was distinctly informed by Huston that no title could be made for the property, except through the Orphans' Court, because James Yocum owned the property at his death, and had died intestate, leaving two children, of whom the plaintiff was one, such notice was not to be regarded as coming from a stranger, and is sufficient to have put Butcher on inquiry as to the title of any one else offering to sell it.

The verdict was for the plaintiff, on which judgment was entered, October 21st 1868.

The defendant took a writ of error, and assigned for error amongst others,

1, 2 and 3.  The admission of the evidence contained in the bills of exceptions.

4.  The charge of the court.

*W. W. Juvenal* and *W. L. Hirst*, for the plaintiffs in error.— As to the first three assignments they cited Wilkins *v.* Anderson, 1 Jones 409; Scott *v.* Gallagher, 14 S. & R. 333; Bracken *v.* Miller, 4 W. & S. 102; Juvenal *v.* Patterson, 10 Barr 283; Boggs *v.* Varner, 6 W. & S. 472; Kerns *v.* Swope, 2 Watts 78; Peebles *v.* Reading, 8 S. & R. 484; Ripple *v.* Ripple, 1 Rawle 386;

[Butcher *v.* Yocum.]

Hood *v.* Fahnestock, 8 Watts 492; Jacques *v.* Weeks, 7 Id. 261; Jolland *v.* Stainbridge, 3 Ves. 478; Dougherty *v.* Darrach, 3 Harris 399; Churcher *v.* Guernsey, 3 Wright 84. As to the 4th assignment: Barlow *v.* Beall, 8 Harris 179; Kaine *v.* Denniston, 10 Id. 202; Wright *v.* Wood, 11 Id. 130; Wilson *v.* McCullough, Id. 440; McKean Impt. Co. *v.* Mitchell, 11 Casey 269; Yocum *v.* Morrow, 3 Phila. Rep. 414.

*J. Titus* and *J. Pollock* (with whom was *H. Orwig*), for defendant in error, cited as to the 4th assignment of error, Seibert's Appeal, 7 Harris 56.

The opinion of the court was delivered, March 1st 1869, by

READ, J.—The defendant claimed title to the premises under a deed dated January 6th 1847, and recorded the next day, from B. Lee to Margaret Yocum, the mother of the plaintiff, and a conveyance of the same by Margaret Yocum to Samuel Butcher, the defendant, dated January 3d 1848, and recorded the 11th February 1848.

On the part of the plaintiff it clearly appeared that these premises were the property of James Yocum, the husband of the said Margaret Yocum, and that he died on 9th September 1846, leaving a widow and a child, the present plaintiff, a boy a few years old. The first three exceptions, which are the subject of the first three specifications, were to matters showing the nature of the title of the decedent Yocum, and were clearly evidence in the cause. The 4th specification of error raises the real question in the case; it is that the court erred in refusing to charge as requested in defendant's 3d point, and in telling the jury "that if they should find from the evidence that Joseph Huston was the grandfather of Edmund G. Yocum, the plaintiff, and that before Butcher bought the property he was distinctly informed by Huston that no title could be made for the property, except through the Orphans' Court, because James Yocum owned the property at his death and had died intestate, leaving two children, of whom the plaintiff was one, such notice was not to be regarded as coming from a stranger and is sufficient to have put Butcher on inquiry as to the title of any one else offering to sell it." The verdict of the jury found the facts required by the charge of the court, and the evidence was clear, distinct and positive on the question of notice. The only point open is whether the court were right in saying that notice by the grandfather was not to be regarded as coming from a stranger.

In 1 Story's Equity, by Judge Redfield, § 400 b, it is said: " And this is not indispensable to the validity of notice of an equitable interest, that it should come from the party or his agent, it is sufficient if it be derived *aliunde;* provided it be of a character likely to gain credit." This seems also to be the opinion of the learned

[Butcher *v.* Yocum.]

American editors of White and Tudor's Leading Cases in Equity, vol. 2, p. 158, "and," say they, "it can hardly be doubted that the same result will follow from the statement of any fact within the knowledge of the party who states it, which shows that the title purchased is subject to the legal or equitable claims of other persons. This course of reasoning seems amply sufficient to sustain the case of Ripple *v.* Ripple, 1 Rawle 386, where information of the existence of an equitable charge on land was held to be notice, although not proceeding from the parties directly interested, without a resort to the special ground on which it was decided." The late case of Lloyd *v.* Banks, Law Rep. 3 Ch. Ap. 488, 37 L. J. R. N. S. 881, decided by Lord Cairns, clearly supports this doctrine. In this case (Ripple *v.* Ripple), the notice was given by an uncle of a female in a state of idiocy, "and surely," says Gibson, C. J., "one so near in blood as an uncle might lawfully interpose for their protection." In the present case the plaintiff was an infant of tender years, his mother the person to convey away his estate, his guardian standing by. Was not his grandfather not only a proper person to give notice to a purchaser, but bound as an honest man to do so? In Seibert's Appeal, 7 Harris 56, Judge Lewis says, "In Pennsylvania the grandfather as well as the father is required by the Act of 13th June 1836, § 28, to relieve and maintain his grandchildren when their necessities require it. This statute is in accordance with the moral sense of mankind. Those who suppose that infant grandchildren do not, upon the death of their parents, take the place of the latter in the affections of their grandfather, are strangers to the most ordinary manifestations of the best feelings of the human heart; as the mementos of the departed child, they have peculiar claims to his regard; and their unprotected helplessness, produced by the common bereavement, in most cases rivets his affections to them closer than they ever clung to their parents."

We cannot doubt that the grandfather in this case was a proper person to give notice to the defendant Butcher, of the title of his infant grandchild to the property he was about to purchase.

There is nothing in the 5th and 6th errors.

Judgment affirmed.