HELEN B. McCUSKER vs. ROBERT M. GOODE & another.

Suffolk.   December 8, 1903. — May 20, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Equitable Restrictions.   Limitations, Statute of.*

In a suit in equity to enjoin the defendant from selling a lot of land without impos-
ing certain restrictions thereon, it appeared, that the owner of nine lots of land
successively adjoining each other on the same street as shown on a certain plan
sold one lot subject to certain restrictions and later advertised the other eight
lots for sale at auction subject to the same restrictions.   The plaintiff bought
one of the lots at the auction and two other lots were sold at the auction to other
purchasers, the restrictions being imposed by the respective deeds of the three
lots.   The other five lots were not sold at the auction.   One of them subsequently
was sold and was conveyed by a deed stating it to be " subject to such restrictions
as are now in force and applicable to the granted premises, if any there be."   More
than six years after the auction this lot was conveyed to the defendant, who had
no knowledge of any restriction, by a quitclaim deed without reference to the
restrictions.   At the time of the auction the plaintiff and the two other purchas-
ers had signed a memorandum in writing but not under seal, by which each
agreed to pay for the lot purchased by him on the terms of sale therein stated
including the restrictions.   *Held,* that the defendant's lot was subject to no re-
strictions for the benefit of the plaintiff's lot, and that if the plaintiff ever had
any rights under the memorandum in writing which he could have enforced after
the delivery and acceptance of his deed, such rights were barred by the statute
of limitations at the time that the defendant bought his lot.

BILL IN EQUITY, filed July 19, 1902, by the owner of a lot of
land on Townsend Street in that part of Boston called Roxbury,
to enjoin the defendant Goode from selling a lot of land belonging
to him on the same street without inserting in the deed thereof
certain restrictions, and the defendant Norcross, trustee, from
selling the same lot under the power of sale in a certain mort-
gage without inserting in the deed the same restrictions, and
for a decree declaring the lot in question to be subject to the
restrictions.

In the Superior Court the case was heard by *Mason,* C. J.,
who made a decree that the bill be dismissed with costs to each
defendant.   The plaintiff appealed.   At the request of the de-
fendants the judge made an order under Chancery Rule 35
appointing a commissioner to take the evidence to be reported
to this court.

The advertisement of the auction at which the plaintiff purchased his lot was as follows:

"By L. Foster Morse, Auctioneer.   Office, 56 Warren St. (telephone connection).

"Auction sale of 8 desirable lots of land on the Harris estate, Townsend St., Between Humboldt and Walnut Avs., Ward 21, Thursday, Oct. 13, at 3 o'clock P. M., on the Premises.

"The lots contain about 8000 square feet each, with frontage of 68 feet, 120 feet deep, restricted to single dwelling house, to cost not less than $6000, to set back from the line of the street 25 feet, location good, 120 feet above tidewater; water, sewer and gas in street, electric cars, Warren St., a short distance to Franklin Park; plans can be seen at the office of the auctioneer; $200 to be paid on each lot at sale."

The memorandum signed by the plaintiff and by the two other purchasers at the auction was as follows:

"Boston, October 13th, 1892.

"I hereby acknowledge to have this day purchased at Public Auction from Joseph Stone *et al.* by L. Foster Morse, Agent and Auctioneer, the lot of land, number of lot, and feet of same set opposite my name for the price thereto affixed, subject to the following terms and conditions, a good title or no sale, ten days given from date to examine title unless more time is required to perfect the title, and the same to be extended in writing by the Auctioneer and Agent, $200 required as a deposit and in part payment on each lot at sale, balance cash or 1/2 cash and 1/2 on a mortgage for      yrs at      %.

"Sale made subject to the following restrictions: That until January 1st, A. D. 1910, no building, other than one single dwelling house, to cost not less than six thousand dollars, and the structures usually appurtenant thereto, including a private stable, shall be erected on each lot; and the line of all buildings other than private stables shall be placed twenty-five feet back from the street; but porticos, bay windows, piazzas and front steps. to buildings may project over said line and be placed within twenty-five feet of the street; and all private stables shall be set back at least sixty feet from any street.

"Purchaser to assume and pay the taxes assessed on the property for the current year 1892, and having paid into the hands

of L. Foster Morse, Agent and Auctioneer, the sum of $200 as a deposit and in part payment, I hereby agree to forfeit said sum to the use of the seller should I fail to comply with the residue of the terms and conditions of sale. A forfeiture of said sum will not release the purchaser of his liability under this contract."

The following is taken from the plan annexed to the plaintiff's bill:

Lot 301 was sold to the plaintiff at the auction. Lot 302 was sold at the auction to one H. S. Fisher, and lot 303 to one Samuel C. Keene. Lots 304, 305 and 307 were bid off at the auction but not sold. Lot 304 afterwards was sold to the defendant Goode. Lot 306 had been sold before the auction. Lots 308 and 309 were not bid off or sold at the auction.

*F. M. Forbush*, for the plaintiff.

*J. N. Palmer*, (*H. A. Smith* with him,) for the defendants.

KNOWLTON, C. J. This is a bill in equity brought to enforce certain restrictions upon the use of the defendants' land. The bill was dismissed and the plaintiff appealed. The testimony was heard orally by the presiding judge, and was reported by a commissioner and made a part of the record which came to this court.

The evidence tended to show, and we infer that the judge found, that neither of the defendants had any notice of facts on which the claim is founded, except that which appeared of record in the registry of deeds. There is nothing in the report to indicate that this finding was erroneous. The testimony was uncontradicted that each of the defendants had the title examined before taking his deed, and was told by the examiner that there were no restrictions upon the premises. We are, therefore, brought to the questions whether there was such an incumbrance upon the property, and if so, whether there was

anything in the registry of deeds that gave constructive notice of it.

The plaintiff's contention is that by reason of a sale of certain lots by auction, subject to restrictions as to the kind of buildings that might be erected upon them and the distance from the line of the street at which buildings might be erected, the purchasers acquired the right, among themselves and against the vendors who retained other lots, to have these restrictions enforced. The plaintiff purchased one of these lots, and the defendants' lot was one that was not then sold but was retained and subsequently sold by the vendors.

The pleadings and evidence show that eight lots along the street were offered for sale by auction, of which three were sold, one to the plaintiff and one to each of two other persons. A deed of his lot was made to each of the three, containing the restrictions. It is averred in the bill that three other lots were bid off at the sale but the respective purchasers thereof never completed their purchases and no deeds were ever executed or delivered to the purchasers. It is also averred that the remaining two lots were withdrawn from the sale immediately after the others were sold. The only proof as to these two averments is that two of the lots were bid off for the vendors and the third was bid off for a person of whom nothing is shown, and that two of the lots were not bid off by any one. All that the registry of deeds showed in regard to the defendants' lot is that the later conveyances described it as free from incumbrances, while two deeds earlier in the defendants' chain of title, one from one of the persons who sold to the plaintiff and one from his grantee, described the lot "as subject to such restrictions as are now in force and applicable to the granted premises, if any there be." It showed that there were no restrictions upon the lot, unless restrictions resulted from the sale of the other three lots already referred to, and from the sale by the same vendors of another lot on the same street, shown on the same plan, a considerable time before, the deed of which contained the same restrictions. None of these deeds in terms purported to give any rights in any other lots. They simply restricted the use of the lot granted, in the manner described. The plaintiff also introduced evidence that the advertisement of the auction sale and the announcement

of the terms of the sale by the auctioneer contained a statement that the eight lots would be sold at the auction, subject to these restrictions. The vendors were the owners of much other land in the vicinity, whose value would be affected by putting restrictions on these lots.

The principal question to be considered may be divided into two parts: first, did the auction sale give the purchasers rights among themselves, respectively, to have the restrictions enforced for their benefit; secondly, if it did, did their rights also extend to the lots which were retained by the vendors, and did the record give constructive notice of these rights to subsequent purchasers?

If the lots had all been sold according to the terms of the sale and deeds made accordingly, the facts would have justified, if not required, a finding that there was a general scheme of improvement in the division of the land into lots and the sale of them with restrictions, which was intended to give to every purchaser the benefit of the restrictions. *Parker* v. *Nightingale,* 6 Allen, 341. *Hano* v. *Bigelow,* 155 Mass. 341. *Jackson* v. *Stevenson,* 156 Mass. 496, 501. *Nottingham Patent Brick & Tile Co.* v. *Butler,* 15 Q. B. D. 261, 269; *S. C.* 16 Q. B. D. 778, 784. *Collins* v. *Castle,* 36 Ch. D. 243. *In re Birmingham & District Land Co.* [1893] 1 Ch. 342, 346, 349. *Tallmadge* v. *East River Bank,* 26 N. Y. 105.

There is good ground for contending that, after a sale upon such terms, at which some of the lots were retained by the vendor, a purchaser would have a right to insist that his deed should contain a stipulation that the remaining lots should be held and sold subject to the same restrictions. Thereby he would acquire an easement in the remaining lots, giving him the same rights in regard to their sale as he would have in regard to the lots already sold subject to the restrictions. *In re Birmingham & District Land Co.* [1893] 1 Ch. 342, 346, 349.

It is the policy of our law in regard to the recording of deeds, that persons desiring to buy may safely trust the record as to the ownership of land, and as to incumbrances upon it which are created by deed. R. L. c. 127, § 4. *Woodward* v. *Sartwell,* 129 Mass. 210. *Dow* v. *Whitney,* 147 Mass. 1. There was nothing contained in any deed which purported to restrict the use of

the lot sold to the defendant Goode. Restrictions contained in three deeds made at or about the same time, and in another made a considerable time before, would not show that the restrictions were imposed upon other lands which remained unsold. Restrictions resting simply in parol could not be enforced. R. L. c. 127, § 3. The statement in regard to restrictions in the advertisement of the auction sale was of no effect upon land that was not sold and which afterwards came to the defendant Goode. The paper stating the terms of the sale, which was signed by the plaintiff and others who bought lots, was a contract by each in regard to the purchase of his lot. If impliedly it gave rights in regard to the lots which were retained, it was merely a memorandum or preliminary contract, which never was recorded, and which was superseded by the completion of the sale, the delivery of the deed and the payment of the price, for all of which it provided. It is of no effect to create an incumbrance against a subsequent *bona fide* purchaser of land which was not sold at the auction.

The only question of difficulty in the case is that which we have already considered in part, whether a reference in the deed from the original owner to "such restrictions as are now in force and applicable to the granted premises, if any there be," is effective to create or continue an incumbrance upon the defendants' land. This depends upon whether there were then any restrictions "in force" upon it. If there were restrictions, they were created by the deeds. The plaintiff's deed was made on October 13, 1892, and presumably the deeds to the other purchasers at the auction were made about the same time. The deed of the defendants' lot, from one of the owners who originally offered it at auction, was made on June 15, 1899. In the meantime there had been a partition of the property, which was owned by tenants in common, and this lot had been set off to the owner who made the deed to the defendants' predecessor in title.

The paper signed by the plaintiff at the time of the auction was a simple memorandum, not under seal, and if rights ever could have been enforced under it, they were then barred by the statute of limitations. We are of opinion that these deeds to the purchasers gave them no rights to restrictions, that could be

enforced against the original owners seven years after the sale, upon the lots which they then retained.    Whether the plaintiff could have enforced such restrictions against them immediately after the auction sale is a very different question, which we need not now decide.

*Decree affirmed.*