Ladner et al., Appellants, *v.* Siegel et al.

Argued October 1, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Grover C. Ladner,* for appellants.—The restriction imposed by Siegel himself was for the benefit of the entire neighborhood and could not be released except by all: Drucker v. Russell, 279 Pa. 443; Fletcher v. Bien, 283 Pa. 517.

If the restriction be interpreted as being solely for the benefit of Siegel, then, nevertheless, Siegel, having induced plaintiffs to purchase their homes and to submit them to restriction upon the faith of Siegel's promise to restrict all of his undeveloped land with the same restriction, put it beyond his power to otherwise deal with the land on which the garage is erected: McCall v. Davis, 56 Pa. 431; Maul v. Rider, 59 Pa. 167; Butcher v. Yocum, 61 Pa. 168.

Irrespective of the question of restrictions, the contemplated use of the garage, even if restricted to particular persons, viz.: tenants of a proposed apartment or garden court, would be a nuisance in fact: George v. Goodovich, 288 Pa. 48; Mitchell v. Guaranty Co., 283 Pa. 361; Slingluff v. Tyson, 280 Pa. 206.

*W. B. Saul,* of *Saul, Ewing, Remick & Saul* and *Francis Shunk Brown,* of *Brown & Williams,* with them *Edmund R. Finegan,* for appellees.—The restriction im-

posed by Siegel was not for the benefit of the entire neighborhood.

Defendants are not prevented from erecting or operating a building for the storage of automobiles because of any doctrine of equitable estoppel or reciprocal negative easements.

William M. Anderson is a purchaser for value without notice and therefore cannot be bound.

OPINION BY MR. JUSTICE SADLER, November 26, 1928:

Siegel, one of the defendants, in 1917, acquired from the Drexel Estate eleven separate though contiguous lots of ground, largely undeveloped, divided into sections by opened and unopened streets marked on the Philadelphia city plan. A subdivision was made of some of the blocks, and properties were acquired by the plaintiffs in this proceeding in that section comprised within the four rectangles bounded by 46th and 47th Streets, Spruce Street and Osage Avenue, and part of one adjoining to the west. The lots marked thereon were sold for residential purposes, and in all seventy detached and semidetached houses were erected. In each instance, the deed to the grantee restricted the use to the erection of private dwellings and garages, and prohibited the establishment of commercial enterprises on the land conveyed. A similar limitation was placed on the land deeded to the Garden Court Apartments in 1917, within one of the squares referred to, upon which a building was constructed in 1922, but the owners and mortgagees thereof released, in 1927, their right to object, if any they had, to the erection of the apartments, stores and garage on the block bounded by 47th, 48th, Spruce and Pine Streets, three-fifths of which constituted a part of tracts seven and eight conveyed to Siegel by the Drexel Estate, but separated from the other portions by highways.

In 1927, the present defendants proposed to construct apartment houses on three sides of the block last men-

tioned with stores facing Pine Street, and a garage for the use of occupants of these contemplated buildings placed within the enclosure and largely under ground, having, however, an entrance on the highway named. Owners of residences, holding restricted deeds from Siegel for lots or tracts other than seven or eight, above referred to, complained, setting forth, in the bill filed to restrain the erection of the new buildings, that the entire district was residential in character, and a public garage, constituting a nuisance per se in such a locality, was not legally permissible. This contention was upheld, and a decree entered enjoining the use of the new structure as proposed,—actually erected in the center of the block, during the pendency of the legal proceeding. Upon appeal, the action of the court below was affirmed (Ladner v. Siegel, 293 Pa. 306), and a reference to the opinion then filed will explain more fully the facts involved.

The plaintiffs were of opinion that the relief granted was not sufficiently comprehensive, and have therefore now appealed on their own behalf. It is contended first, that the restraint of the use of the garage as a public one, in view of the character of the district in which it is built, does not furnish the redress to which they are entitled, since the evidence adduced showed that the building, if operated, would constitute a nuisance in fact, and so offensive in character as to justify an injunction, irrespective of the locality, which finding should have been made by the court. It is true that a business of the kind complained of may, on proper showing, be restrained even in commercial districts, though in reality private garages (George v. Goodovich, 288 Pa. 48; Mitchell v. Guaranty Corp., 283 Pa. 361), but the bill filed in the present case was not based on such averments. It appears by paragraphs 17 and 22, and the prayers thereof, as well as in the replication filed to the answer of one of the defendants, that the relief asked was from the operation of a "public garage," and it was granted.

There is, therefore, no merit, under the pleadings, in the present complaint, that the court should have concluded from the testimony that the use of the building be restrained as constituting a private nuisance.

The real controversy raised is based on the supposed effect of the restrictions found in the deeds to the plaintiffs and others, in which it was provided that there should be only private dwellings and garages erected on the property purchased by them, and that the land conveyed should not be devoted to commercial purposes. It is contended that all of the eleven parcels of land acquired by Siegel from the Drexel Estate, in view of the subsequent conduct, are to be considered as part of a general residential development, and limitation as to use of any portion was applicable to all, though ownership of the remaining part was retained by the grantor, or later acquired by other purchasers. It will be remembered that the restrictions are to be found in the grants of various lots in four blocks and part of a fifth, separated by highways from the one on which the building complained of is located, and, further, that the owners of the building on the southwest corner of 47th and Pine Streets, known as the Garden Court Apartments, disclaimed any right to object.

It is true that building restrictions inserted for mutual benefit may be enforced, if the intention to so provide is apparent: Landell v. Hamilton, 175 Pa. 327; St. Andrew Church's App., 67 Pa. 512. Such limitations are not to be extended by mere implication, but must be shown by some express agreement of the parties, or conduct indicating the existence of such (Satterthwait v. Gibbs, 288 Pa. 428; Harmon v. Burow, 263 Pa. 188; 15 C. J. 1218), and will be enforced only for the one intended to be benefited: Clark v. Martin, 49 Pa. 289. In considering the question, it is presumed that all of the prior negotiations, fixing the rights of the grantee, have been inserted in the writing executed: Stoever v. Gowen, 280 Pa. 424; Martin v. Holm (Cal.), 242 Pac. 718. A

mere sale of part of the land owned does not necessarily carry the restriction, found in the deed given, to that retained (Korn v. Campbell, 192 N. Y. 490, 85 N. E. 687; McCusker v. Goode, 185 Mass. 607, 71 N. E. 76), nor will the fact that the balance of the land is in close proximity to that conveyed, in itself show such an intention: Springfield Real Estate Co. v. Kellett, 281 Pa. 398. A bare intention of a common grantor, conveying adjacent lots in a subdivision to different grantees at different times, subject to restrictive covenants, is not enough to make the covenants inure to the benefit of all persons claiming under him by prior or subsequent deeds (18 C. J. 396), but a purpose to bind the remaining land must be made to appear.

"The mere fact that the grantor in selling several lots imposed restrictions in the conveyances which, it was expected, would benefit the premises which were subjected to them, and a common advantage to all of the lots may for this reason have been anticipated, is not sufficient to establish a general scheme or plan which will create an equitable easement": 18 C. J. 395. Even though the deed to the grantee makes no provision that other land shall be likewise bound by a building restriction, it may be proven that such was the purpose, or that the parties had so agreed, in which case the owner would be bound (Lowes v. Carter, 124 Md. 678, 93 Atl. 216; Kolt v. Fleischman, 78 N. Y. Supp. 647), but not a purchaser from him who had no notice, or as to whom there was nothing to put him on inquiry of the true state of facts. In the present case, witnesses were produced to show such understanding with Siegel, but the most that can be elicited from their testimony, or the advertisements or signs referred to, is that the entire district was to be residential in general character, and not that the retained vacant ground should be subjected to building restrictions such as appeared in the deeds of the complaining grantees.

As already stated, the facts may disclose the purpose of the limitation inserted to be for a number of properties, of which one only is at the time conveyed (McQuade v. Wilcox (Mich.), 183 N. W. 771), and where there is this apparent intent, all of the property of the grantor in contemplation will be bound: Sanborn v. McLean, 233 Mich. 227, 206 N. W. 496. Such restrictions by implication will be enforced when the facts clearly show the understanding of the parties to have purposed their inclusion, though not fixed by express words: Meriwether v. Joy, 85 Mo. App. 634. This is usually found where lots have been sold according to a plan indicating a general scheme of restricted development: Wimer v. Yellin, 286 Pa. 33; Fletcher v. Bien, 283 Pa. 517; Morrow v. Traction Co., 219 Pa. 619; McCall v. Davis, 56 Pa. 431; Bacon v. Sandberg, 179 Mass. 396, 60 N. E. 936. Even in such case there must be clear proof that restrictions were intended, and the extent thereof: McCloskey v. Kirk, 243 Pa. 319. Though there be no plot, it is still permissible to show that there were limitations applicable to all the land included within a general scheme of development, as a result of which the purchase was made, and the grantees will then be entitled to equitable protection (Drucker v. Russell, 279 Pa. 443; Murphy v. Ahlberg, 252 Pa. 267; Rabinowitz v. Rosen, 269 Pa. 482; Muzzarelli v. Hulshizer, 163 Pa. 643), but there is no adequate proof of such understanding here.

In the present instance, Siegel bought eleven distinct tracts of ground covering various blocks, separated by city streets. The building restrictions are found in deeds to grantees of lots on four of these squares, and part of a fifth, but not on the one where the buildings complained of have been or are to be erected. The mere fact that all of the property was ultimately intended for residential purposes is not sufficient to carry, by implication, to all of the other squares, building restrictions imposed on lots on another separate block, nor is there

any sufficient evidence to show this was the understanding between the seller and the purchasers.

In view of this conclusion, it is unnecessary to discuss the right to impose such a limitation without a writing as violative of the statute of frauds, the subject of argument before us, or the effect of the deed for one-half of the property to an innocent purchaser for value (who became an intervening party defendant), made before injunction granted, but not recorded until some days after the same issued. If he bought with notice of the existence of a binding and enforceable restriction (Morrow v. Traction Co., supra; Butcher v. Yocum, 61 Pa. 168; Whistler v. Cole, 143 N. Y. Supp. 478, 146 N. Y. Supp. 1118; Lowes v. Carter, supra), or the facts were such as to put him on inquiry, developing the fact that the land was so burdened (Hottenstein v. Lersch, 104 Pa. 454; King v. St. Louis Union Trust Co., 226 Mo. 551, 126 S. W. 415; Glorieux v. Lighthipe, 68 N. J. L. 199, 96 Atl. 94; Roak v. Davis, 194 Mass. 481, 80 N. E. 690), he would be bound by the limitation, and an equity court would intervene to protect the rights of others interested. Whether there was sufficient in this case to put him on his guard, or the effect of the transfer of an undivided one-half interest by Siegel, need not be now considered, since we are of opinion that the building restrictions inserted in the deeds of complainants cannot be applied to the lot bounded by 47th, 48th, Spruce and Pine Streets, and the court below did not err in refusing to find that they did.

The decree is affirmed at the cost of appellants.