### Baederwood, Inc. *v.* Moyer, Appellant.

36·

Argued January 8, 1952. Before DREW, C. J., STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

*Albert Smith Faught,* with him *Fleer & Miller,* for appellants.

*Samuel A. Goldberg,* with him *Charles H. Brunner, Jr., Samuel H. High, Jr.* and *Wolf, Block, Schorr & Solis-Cohen,* for appellee.

OPINION BY MR. JUSTICE BELL, March 24, 1952:

Plaintiff filed a petition for a declaratory judgment under the Act of June 18, 1923, P. L. 840, 12 P.S. §831.

Baederwood, Inc. proposes to erect on that portion of its ground between Baeder Road and the Reading Railway tracks, and on the ground northwest of Baeder Road, fifty-two two-story multiple family dwellings. Each apartment dwelling will contain two two-bedroom and two one-bedroom apartments—facilities for four families. The buildings are known as garden-type apartments. Each building will have garage space in the basement for one car for each of the four families. The buildings are permitted by the zoning ordinances, and will be financed in accordance with the National Housing Act and with the rules and regulations of the Federal Housing Administration.

Baederwood, Inc. purchased in 1936 a large tract of 144 acres in Abington Township, Montgomery County, Pennsylvania, bounded by York Road, Jenkintown Road and the Reading Railroad. The land which was bought by these defendants was high, wooded and ideal for fine residential use; the land retained by plaintiff was low and swampy and parts thereof were adjacent to railroad tracks and to plants or commercial properties. At the

time of suit as well as at the time of purchase, part of the tract was zoned commercial.

Prior to the filing of plaintiff's petition for a declaratory judgment, plaintiff had conveyed fifty-seven lots, and since the petition fourteen additional lots. Fifty-one lot owners opposed the petition but only four have appealed. The trial judge decided in favor of the defendants; but subsequently wrote an opinion for the court en banc in which he found that "there is no restriction requiring single family dwelling occupancy of [plaintiff's] land, . . . either expressed or implied"; and held that no restrictions existed to bar the erection of the proposed apartments.

The real question involved is whether the purchasers of lots containing various restrictions may under the facts in this case invoke the doctrine of reciprocal covenants so as to bar the original common owner and grantor from erecting two-story multiple family dwelling houses.

All of the deeds made by Baederwood, Inc. provide that no part of the land shall be used for any industrial, commercial or mercantile purposes whatsoever. In other respects, however, the restrictions vary in many of the deeds; and *there is no express restriction with reference to the land which is still owned by the plaintiff.*

Defendants contend that their common grantor, the plaintiff, sold lots as home sites, with descriptions referring to a particular plot or plan which had been approved by the township commissioners, and which imposed restrictions against the construction of buildings other than single one-family residences. The fatal weakness of this contention is that no such map or plot or plan can be found in the recorder of deeds' office or elsewhere; and so far as these purchasers are con-

cerned there was no proof that they bought in reliance thereon, or that any such plan ever existed. *Furthermore, the sales of lots to these defendants were never based upon, or contained any reference to, any plan which restricted or even referred to that part of land upon which plaintiff desires to erect multiple dwelling houses.* However, it is apparent from its deeds and from the general plan or scheme of development that plaintiff intended Baederwood to be a high class residential section of homes.

The Chancellor specifically found: *"The various restrictions*\* in approximately fifty-seven conveyances made up to the time of the filing of the petition in 1947, and in the fourteen conveyances since then, *are not uniform and differ in their various provisions.* They differ in set-back requirements; some fix the areas where shrubs and trees may be placed, while others do not; some prohibit the erection of fences, gates or walls without first obtaining the approval of the plaintiff and limit the dimensions, while others say nothing about it; some contain cesspool limitations, while others do not; some contain provisions against occupancy by persons other than the Caucasian race, while others do not; some prohibit the accumulation of refuse or the keeping of livestock or poultry, while others do not; some require the lawn to be mown and to be kept free from weeds and rubbish and the shrubs trimmed, while others do not; some place limitations upon 'for sale' or 'for rent' signs and their sizes, others do not; some say the dwelling must be at least two stories in height, while others say nothing about it; some fix a minimum cubical content of the dwelling and the garage, and others do not; some state that the structure

---

\* Italics throughout, ours.

may not be of modernistic design, while others say nothing about it."

The pertinent restrictions are as follows: One deed contains no restrictions with reference to a single or private dwelling; the restriction in nine deeds is in the following language: "shall be used only for *private residential purposes*"; the restriction in thirty-five deeds is: "no building shall be erected excepting a *single private family dwelling house,* or excepting a *single private dwelling house*"; the restriction in seven deeds is: "other than a single dwelling . . . two stories in height . . . for one family use"; the restriction in two deeds is: "single dwelling only and strictly for private and one family use"; the restriction in two deeds is: *"certain restrictions of record"*; the restriction in one deed is: "no building shall be erected other than *a single dwelling*"; the restriction in another deed is: "no building other than *a single dwelling* at least two stories in height". It is very important to note that *forty-seven* of these conveyances provide "that the *said restrictions* or any of them *may be altered or extinguished* at any time by an appropriate agreement or release in writing executed by and between the grantor and its successors or assigns the owner or owners of the premises . . .," or by the grantor and the owner of the lot and the adjoining owner or owners; or by the owner of the lot and the "adjoining owner or owners."

The question naturally arises: what is the restriction which defendants contend is impliedly imposed upon the plaintiff with respect to the land which it still owns?

Restrictions may arise (1) by express covenants, or (2) by implication (a) from the language of the deeds, or (b) from the conduct of the parties. To ascertain the intention of the parties, the language of a deed

should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed: *Price v. Anderson*, 358 Pa. 209, 220, 56 A. 2d 215; *Murphy v. Ahlberg*, 252 Pa. 267, 269, 97 A. 406; *Dewar v. Carson*, 259 Pa. 599, 603, 103 A. 343, 344; *Rabinowitz v. Rosen*, 269 Pa. 482, 484, 485, 112 A. 762, 763; *Drucker v. Russell*, 279 Pa. 443, 448, 124 A. 92, 93; *Garvin & Co., Inc., v. Lancaster County*, 290 Pa. 448, 451, 452, 139 A. 154, 155. *There is no express covenant in this case restricting or even pertaining to the land still owned by the plaintiff*; nor is there any implied specific covenant arising out of the deeds from the common owner; nor, as we shall see, is there any implied covenant arising from the conduct of the parties to bar the erection of the proposed two-story multiple family dwellings.

Building restrictions and similar covenants which restrain a man in the free enjoyment of his property are not favored in the law; they are strictly construed and are not to be extended by implication unless the parties clearly so understand and intend: *St. Andrew's Lutheran Church's Appeal*, 67 Pa. 512; *Rohrer v. Trafford Real Estate Co.*, 259 Pa. 297, 102 A. 1050; *Johnson v. Jones*, 244 Pa. 386, 90 A. 649; *McCloskey v. Kirk*, 243 Pa. 319, 90 A. 73.

In the leading case of *Ladner v. Siegel*, 294 Pa. 360, 364, 365, 366, 144 A. 271, the Court said: "It is true that building restrictions inserted for mutual benefit may be enforced, if the intention to so provide is apparent: Landell v. Hamilton, 175 Pa. 327; St. Andrew Church's App., 67 Pa. 512. *Such limitations are not to be extended by mere implication, but must be shown by some express agreement of the parties, or conduct indicating the existence of such* (Satterthwait v. Gibbs, 288 Pa. 428; Harmon v. Burow, 263 Pa. 188; 15 C. J.

1218), and will be enforced only for the one intended to be benefited: Clark v. Martin, 49 Pa. 289. . . . A mere sale of part of the land owned does not necessarily carry the restriction, found in the deed given, to that retained (Korn v. Campbell, 192 N. Y. 490, 85 N. E. 687; McCusker v. Goode, 185 Mass. 607, 71 N. E. 76), nor will the fact that the balance of the land is in close proximity to that conveyed, in itself show such an intention: Springfield Real Estate, Co. v. Kellett, 281 Pa. 398. . . . 'The mere fact that the grantor in selling several lots imposed restrictions in the conveyances which, it was expected, would benefit the premises which were subjected to them, and a common advantage to all of the lots may for this reason have been anticipated, is not sufficient to establish a general scheme or plan which will create an equitable easement': 18 C. J. 395. . . . Such restrictions by implication will be enforced when the facts clearly show the understanding of the parties to have purposed their inclusion, though not fixed by express words: Meriwether v. Joy, 85 Mo. App. 634. *This is usually found where lots have been sold according to a plan indicating a general scheme of restricted development*: Wimer v. Yellin, 286 Pa. 33; Fletcher v. Bien, 283 Pa. 517; Morrow v. Traction Co., 219 Pa. 619; McCall v. Davis, 56 Pa. 431; Bacon v. Sandberg, 179 Mass. 396, 60 N. E. 936. *Even in such case there must be clear proof that restrictions were intended, and the extent thereof*: McCloskey v. Kirk, 243 Pa. 319. Though there be no plot, it is still permissible to show that there were limitations applicable to all the land included within a general scheme of development, as a result of which the purchase was made, and the grantees will then be entitled to equitable protection (Drucker v. Russell, 279 Pa. 443; Murphy v. Ahlberg, 252 Pa. 267; Rabinowitz v. Rosen, 269 Pa. 482; Muzzarelli v. Hul-

shizer, 163 Pa. 643), but there is no adequate proof of such understanding here."

Because of the lack of uniformity and the varied restrictions in the lots conveyed by plaintiff; because the lots sold and conveyed were not sold or conveyed according to any particular or definite map or plot or plan, recorded or unrecorded, or to any plan clearly indicating a general scheme of specifically restricted development; because of the great difference between the land sold, which was well suited for residential use, and the land retained, which was low and swampy; because many of the defendants impliedly recognized (by the Moyer deed of April 15, 1939) a restriction on eighteen lots of the Baederwood development as confined to *"single dwellings and out buildings"*; and *because most of the deeds contain a provision for a release and extinguishment of the restrictions*;—it is clear that no restrictions arose by implication from the deeds or from the conduct of the parties to bar the multiple family dwelling units which plaintiff proposes to erect.

The opinion of Mr. Justice STERN in *Price v. Anderson*, 358 Pa. 209, 215, 56 A. 2d 215, is particularly applicable to the facts of this case and answers and refutes all of defendants' contentions: ". . . where there is a definite plan of a real estate development for residential purposes, as shown, for example, by the filing of a map, in pursuance of which numerous conveyances of lots are made *containing uniform restrictions*, there is presumably created thereby a neighborhood or community scheme that may give rise to an implied reciprocal covenant on the part of the grantor that he will not thereafter convey any part of the original tract without imposing thereon the same restrictions, and that he will not himself devote the remaining part of the property to the prohibited purposes. *But the*

*mere fact that a grantor imposes restrictions on parts of a tract which he sells does not raise any inference that he means thereby to obligate himself to restrict the remainder of his property; in every such case there must appear [clear and] definite evidence of a purpose to bind the remaining land,* and that purpose must be clearly made known to the grantees: CARDOZO, Ch. J. in *Bristol v. Woodward,* 251 N. Y. 275, 283. These principles are fully set forth in *Ladner v. Siegal,* 294 Pa. 360, 144 A. 271, a case involving part of the very city block with which the present litigation is concerned. In the successive sales of land by the Price Estate there was not apparent any such general scheme of development or uniform improvement, nor any such understanding with the several grantees, as would warrant the implication of a restrictive covenant with respect to the land retained by the Estate. No map or comprehensive plan was ever prepared or publicized; indeed the restrictive covenants in the various deeds, while similar to one another in some respects, were not uniform, and in many of them it was provided that the restrictions imposed could be released if the grantors, their heirs and assigns, consented; where such a provision appears the principles applicable to neighborhood schemes with mutual and reciprocal covenants have no pertinency: Gibney v. Stockdale Corporation, 20 Del. Ch. 272, 275-277, 174 A. 117, 119."

*Price v. Anderson* and *Ladner v. Siegel,* supra, are decisive of and rule the present case. It is therefore unnecessary to discuss or decide the differences, if any, between the various restrictions (supra) imposed upon defendants' lots, viz., "a dwelling for private residential purposes" or "a single private family dwelling house", or "a single private dwelling house", or "a single dwelling", or "a single dwelling only and strict-

ly for private and one family use", or "a single dwelling two stories in height", or "a single dwelling at least two stories in height", or "single dwelling and out buildings".*

Decree affirmed; appellee to pay the costs.

---

\* Cf. *Johnson v. Jones*, 244 Pa. 386, 90 A. 649; *Hamnett v. Born*, 247 Pa. 418, 93 A. 505; *Rohrer v. Trafford Real Estate Co.*, 259 Pa. 297, 102 A. 1050; *Taylor v. Lambert*, 279 Pa. 514, 124 A. 169; *Gerstell v. Knight*, 345 Pa. 83, 26 A. 2d 329; *Pocono Manor Association v. Allen*, 337 Pa. 442, 12 A. 2d 32; *Fox v. Sumerson*, 338 Pa. 545, 13 A. 2d 1.