King v. J. C. Hess Ford, Inc.

*George W. Gekas*, for plaintiffs.

*Richard C. Fox, William Nearen*, and *Jefferson C. Barnhart, McNees, Wallace & Nurick*, for defendants.

SHELLEY, J., October 21, 1968.—Plaintiffs filed a complaint in equity praying in Count I thereof that defendants, J. C. Hess Ford, Inc. and Hamaker & Associates, or any other person be perpetually restrained from: (1) "erecting any buildings in violation of the restrictions as contained in the Deeds of the common predecessor in title"; (2) "that the building permits which were issued be set aside"; and (3) "to require the defendants to act in accordance with the Sub-Division Ordinance of Derry Township, Dauphin County, Pennsylvania".

Plaintiffs pray in Count II thereof that defendants, Clara B. Rodeffer and Elizabeth J. Hess or any other persons be restrained perpetually from: (1) "conveying the subject property except under and subject to the same restrictions, express or implied as contained in the Deeds from the common predecessor in title" and (2) "and that the defendants or any other person be restrained from selling, transferring, assigning or setting of any deeds to the subject land not in conformity with the land Sub-Division Ordinance of Derry Township, Dauphin County, Pennsylvania".

Plaintiffs pray in Count III that defendant, John J. Lepperd, Building Inspector of Derry Township, Dauphin County, Pennsylvania, "be directed to withdraw the building permits issued to the defendants, Hamaker & Associates and J. C. Hess Ford, Inc.".

## FINDINGS OF FACT

1. On November 27, 1929, Jacob Hess and Emma Hess, his wife, acquired a 65 acre tract of land situate in Derry Township, known as the "O'Neal Farm".

2. Said tract of land was laid out in building lots upon a plan known as Jacob C. Hess Estate Plan, which plan was dated October 7, 1939, and contained some 254 building lots.

3. A copy of the plan of lots referred to in finding of fact 2, was found in the office of the Township Supervisors, Derry Township, Dauphin County, Pa., subsequent to the date of the action brought by plaintiffs for injunctive relief in this matter.

4. Said plan of lots was never filed with nor adopted by the Board of Supervisors, and no official action or notice was ever taken by the board with respect thereto and was not recorded in the Office for the Recording of Deeds, etc., in and for Dauphin County, Pa.

5. Said plan of lots depicts building lots and street dimensions, and contains no references as to building or land use or other types of restrictions.

6. After the tract was so subdivided into building lots, between November 20, 1939, and September 4, 1959, Emma J. Hess and her heirs made 45 conveyances by deed encompassing 82 lots. All of the said 45 deeds of conveyance refer to the Jacob C. Hess Estate Plan referred to in finding of fact 2.

7. Nine deeds conveying 17 lots have no restrictions.

8. Two deeds conveying three lots have restrictions designated herein as type 1.[1]

---

[1] "Type 1 Restrictions: [Continued at foot of p. 4]

**4**

9. Thirty-four deeds conveying 62 lots have restrictions designated herein as type 2.[2]

"(a) not to erect or build, or cause or permit to be erected, built, or maintained, upon the hereby granted lot of land, or upon any part thereof, any hospital, hotel, tavern, drinking saloon, piggery, blacksmith, carpenter, machine, or wheelwright shop, steam mill, tannery, slaughter house, butcher shop, skin dressing establishment, curriershop, livery stable, public service garage, glue, soap, candle, lamp black, or poudrette manufactory, or any factory of any kind where power shall be used, or any building for the manufacture of malt or spiritous liquors of any kind, or any building for offensive purposes, or occupation, trade, calling, or business, which will in anywise be dangerous, noxious, unwholesome, or offensive to the neighboring inhabitants; that the premises, or any part thereof, shall not be used for any of the above-named purposes, nor shall any building thereon erected be converted into any such building, or used for any offensive purpose or occupation;

"(b) that the land hereby conveyed, or any part thereof, shall not be used for any business or manufacturing purposes of any kind or nature whatsoever, except by permission of the said Emma J. Hess, her successors or assigns, given in writing, setting forth the nature and character of the business to be done (which shall not conflict with or violate the restrictions contained herein), and the style and value of the buildings which shall be constructed thereon for that purpose; that the land hereby conveyed, or any part thereof shall not be laid out or used as a cemetery;

(c) that the dwelling or garage to be erected shall not have what is commonly known as a flat roof, or the dwelling to be erected less than one and one-half stories in height."

[2] "Type 2 Restrictions:

"The said grantees for themselves, their heirs, executors, administrators, successors and assigns, the owners and occupiers hereafter forever, of the above described plot of land, and for each and every of them, do hereby covenant and agree to and with the said grantors, their heirs, executors, administrators, successors and assigns that the herein conveyance is made subject to the limitations and restrictions hereafter set forth:

"(a) To leave unbuilt and unobstructed except by steps, cellar-doors, piazzas, bay-windows, fences, trees or shrubbery thereupon, that portion of the 70 feet in depth of the said hereby granted premises which is within 70 feet from the center line of the highway, street or avenue fronting thereon.

"(b) Not to erect, build or maintain or cause or permit to be erected, built or maintained upon the hereby granted premises or upon any part thereof, any hospital, hotel, tavern, drinking saloon, business in which alcoholic beverages of any kind or nature are used, served or sold, carpentry, machine shop or any establishment of any kind where power shall be used, or any building used for offensive purposes or occupation, trade, calling or business which will in any way be dangerous, noxious, unwholesome or offensive to the neighboring inhabitants; that the premises or any part thereof shall not be used for any of the above-named purposes nor shall any building thereon erected be converted into any such building or used for any offensive purposes or occupation.

"(c) That the land hereby conveyed or any part thereof shall not be used for any business or manufacturing purpose of any kind or nature whatsoever except by permission of the said grantors, their heirs, executors, administrators, successors or assigns, given in writing, setting forth the nature and character of the business to be done (which shall not conflict with or violate the restrictions contained herein), and the style and value of the buildings to be constructed or maintained thereon for such purposes.

"(d) Not to erect, build, maintain or permit to be erected, built or maintained on the premises herein conveyed or any part thereof, any building, unless by permission hereinbefore provided for, except a dwelling house, nor more than one dwelling house; and the cost thereof shall not be less than $10,000, nor a dwelling house for the use and occupancy of more than one family, unless the plan for same first has been submitted to and approved in writing by the said grantors, their heirs, executors, administrators, successors and assigns.

"(e) That no fence shall be built, constructed or maintained on any part of said premises unless the nature, kind, shape, style and material first be made known and approved in writing by the grantors, their heirs, executors, administrators, successors and assigns.

"(f) That if any building or structure shall be at any time hereafter be placed, erected, used or occupied upon the hereby granted premises or any part thereof contrary to the true and intended meaning of these premises, and if the said grantees, their heirs and assigns shall fail to remove the same on receiving 30 days' notice in writing so to do from the said grantors, their heirs, executors, administrators, successors or assigns, the said grantors, their heirs, executors, administrators, successors and assigns, may enter upon the hereby granted premises and into the buildings thereon erected and at the cost of the said grantees, their heirs and assigns,

10. Plaintiffs purchased their lots from the aforesaid Jacob C. Hess Estate Plan referred to in finding of fact 2.

11. Plaintiffs' deeds make reference to lots in the Jacob C. Hess Estate Plan referred to in finding of fact 2 and contain type 2 restrictions. (Footnote 2.)

12. Of the 9 deeds bearing no restrictions, 8 were conveyances to members of the Hess family and 1 was to Martin Foreman, an employe of the Hess family.

13. On April 14, 1967, defendant, Hamaker & Associates, became the equitable owner of a part of the Hess tract referred to in finding of fact 1 under a purchase agreement from Elizabeth J. Hess and Clara B. Rodeffer.[3]

14. Defendant, Hamaker & Associates applied for and was issued building permit No. 465 by the Board of Supervisors, Derry Township, Dauphin County, Pa.,

---

owners or occupiers of the said hereby granted premises to tear down and remove all such buildings or structures as may be erected, constructed or used contrary to the true intended meaning of these premises, without being subject to any writ, action or proceeding forever or any criminal action for anything reasonably done by them or any of them by reason thereof, or for any entry thereon for the purposes aforesaid, anything herein contained to the contrary thereof notwithstanding.

"(g) To build and maintain in good condition substantial sidewalks ten feet back from the curb line of the same material, character and construction built and maintained by owners of other properties in the same neighborhood. All failing so to do, the said Emma J. Hess, her heirs, executors, administrators and assigns may build and maintain the same at the cost and expense of the party of the second part, his heirs and assigns, which the party of the second part, his heirs and assigns, the owners of the property, hereby agrees to pay.

"(h) To seed and maintain a grass plot on which trees may be planted on ten feet of land between the curb and sidewalk."

[3] A Plan of the Hamaker & Associates tract was recorded in the Recorder's Office of Dauphin County on November 10, 1967, in Plan Book F 2-46.

on October 12, 1967, for the construction of retail stores on the aforesaid premises.

15. Defendant, J. C. Hess Realty Corporation, a Pennsylvania corporation, is the equitable owner of a part of the Hess tract referred to in finding of fact 1.[4]

16. J. C. Hess Ford, Inc., applied for and was issued building permit No. 471, on October 18, 1967, by the Board of Supervisors, Derry Township, Dauphin County, for the construction of a garage on the aforesaid premises.

17. On November 9, 1967, building permit No. 471 was amended to change the name of the applicant from defendant, J. C. Hess Ford, Inc., to J. C. Hess Realty Corporation.[5]

18. There is no evidence in the record of any express restrictions or prohibitions of any kind, recorded or unrecorded, relating to the portions of the Hess tract conveyed to J. C. Hess Realty Corporation or Hamaker & Associates.

19. Signs announcing the shopping center were placed on site on or about July 14, 1967, by representatives of Hamaker & Associates.

20. On or about October 16, 1967, excavation was begun pursuant to building permit No. 471 by Hamaker & Associates, referred to in finding of fact 16, on the site of the proposed shopping center.

21. On or about November 6, 1967, plaintiffs brought this action in equity to restrain further construction activity.

---

[4] A Plan of the J. C. Hess Realty Corporation tract was recorded in the Recorder's Office of Dauphin County on November 10, 1967 in Plan Book F 2-45.

[5] Because of the amendment to the building permit, the J. C. Hess Realty Corporation and not the J. C. Hess Ford, Inc. should have been a party defendant in this action. This error will, however, in no wise affect the ultimate conclusions reached by the chancellor.

8

22. There was, at the time the building permits referred to in finding of facts no. 14 and no. 16 were issued, no zoning ordinance in Derry Township affecting the use of the tract of land referred to in finding of fact no. 2.

## DISCUSSION

The contention advanced by plaintiffs in this case is that by conveying certain tracts of the Hess property to plaintiffs, as aforesaid, the grantor bound the remainder of the property to the restrictions recited in plaintiffs' deeds. This raises the legal issue of the doctrine of implied reciprocal servitudes, which has been summarized in 20 Am. Jur. 2d 732 §173, as follows:

". . . where the owner of two or more lots situated near one another conveys one of the lots with express building restrictions of benefit to the land retained by the grantor, the servitude becomes mutual, and during the period of restraint, the owner of the lot or lots retained may do nothing that is forbidden to the owner of the lot sold".

The most recent Pennsylvania cases dealing with implied reciprocal servitudes have uniformly held that:

"Restrictions may arise (1) by express convenants, or (2) by implication (a) from the language of the deeds, or (b) from the conduct of the parties": Witt v. Steinwehr Development Corporation, 400 Pa. 609, 612 (1960); McCandless v. Burns, 377 Pa. 18, 19 (1954); Baederwood, Inc. v. Moyer, 370 Pa. 35, 40 (1952).

That there are no express covenants burdening any remaining land of the Hess Estate and the lots of defendants is apparent by reference to plaintiffs' deeds. The covenants therein are those of plaintiffs only. There is no reference to any remaining land of the grantor, nor is there any promise by the grantor to restrict his remaining land, nor is there any express restriction with reference to any retained land of the grantor. See

deeds and Baederwood, Inc. v. Moyer, supra; Witt v. Steinwehr Development Corporation, supra.

Rule 2(a), above is more difficult to apply, for the cases offer no guidelines as to the circumstances under which a restriction arises "by implication from the language of the deeds". The three cases wherein the proposition was cited do not discuss it and merely make passing reference to it. Baederwood v. Moyer, supra, the case where the rule was first announced, cites no authority, nor has research disclosed any case in which the proposition was applied to a specific set of facts. In any event, while the language of a deed may be important as it bears on the intent of the parties, it never has been the sole basis for an implied reciprocal servitude. Furthermore, it is especially noteworthy that in the Baederwood and Witt cases, the court held that no implied servitudes arose from the language of the deeds, and in both cases such language expressly limited the operation of the restrictions to the tract conveyed therein, i.e., "the lot hereby conveyed". This is precisely the situation in the instant case, and accordingly the deeds out of the Hess Estate cannot be construed so as to give rise to the restriction contended by plaintiffs.

Rule 2(b) states that restrictions may arise by implication from the conduct of the parties, and several Pennsylvania cases may be cited for the proposition that servitudes will arise by implication where the clear and unequivocal conduct of the parties shows that lots in a tract under subdivision have been sold according to a plan evidencing a general scheme of restrictions to be applied against the entire tract. There are four specific factors of conduct necessary to support such an implication. The first is the creation of a definite plan for real estate development devoting the entire tract to the restricted purpose. The second is the giving of numerous conveyances of land to grantees con-

taining uniform restrictions pursuant to that plan. The third is that the restrictions do not contain a provision for their release. Finally, the fourth is that the community scheme embodied in the said plan was known by the grantor to the grantees at the time of their purchases: Witt v. Steinwehr Development Corporation, supra; Baederwood, Inc. v. Moyer, supra; Price v. Anderson, 358 Pa. 209 (1948); Ladner v. Siegel, 294 Pa. 360 (1928). It is the burden of plaintiff to show conduct of the parties which clearly and definitely demonstrates a mutual intention to burden as well as benefit the land retained by the grantor. Thus, when a restriction rests on mere implication, ". . . the circumstances supporting that implication must have bedrock foundations of evidentiary reliability": Lustig v. Facciolo, 410 Pa. 107, 110 (1963); the evidence offered as proof thereof must be "definite and persuasive": Witt v. Steinwehr Development Corporation, supra. Building restrictions are not favored in the law, but are strictly construed, and every doubt is resolved against their existence. Consequently, where the existence of a restriction is doubtful, and the evidence is reasonably as open to one conclusion as it is to the other, "to doubt is to deny": Brown v. Levin, 295 Pa. 530 (1929).

To prevail in this action, then, plaintiffs are required to show by clear and unequivocal evidence that their lots were sold to them pursuant to a general scheme of subdivision development which binds not only their properties but all of the remaining property of the grantor as well. Examining first the deeds of conveyance made to plaintiffs, it is apparent that these are of no benefit to plaintiffs in establishing their case. The restrictions contained therein relate solely to the property being conveyed, and do not purport to affect the remaining property retained by the grantor. The only intent that can be inferred therefrom

is that the grantor intended to benefit, not burden, the remaining land, and in this respect the instant case parallels the situation in Witt v. Steinwehr Development Corporation, supra. There the deeds in question stated in very similar language that the restrictions were imposed on "the land hereby conveyed" and the court in interpreting those instruments stated, on page 613:

"The language employed in these instruments does not suggest in any degree that other properties were to be similarly burdened".

Plaintiffs contend that the Jacob C. Hess Estate Plan referred to in the finding of fact no. 2 was evidence of an intent to create a neighborhood or community scheme and could give rise to an implied reciprocal covenant of the grantor that thereafter there would be no conveyances without imposing thereon type 2 restrictions.

We cannot so construe the plan. Testimony of witnesses was to the effect that the plan was discovered during the pendency of the instant case in the supervisors' office of Derry Township and was never considered as adopted or given any "official status" by the supervisors. It was admitted in evidence only for the limited purpose of locating the situs of the Hess Estate property in Derry Township.

The variety of restrictions in the deeds given by the grantor referred to in findings of fact 6 through 9 indicate that the requirement of uniform restrictions is not met in this instance.

Furthermore, positive evidence of an intent not to bind the entire tract to residential development is found in the retention by the grantor of a right to abrogate the restrictions against conducting commercial activity on each lot conveyed upon a request made by the grantee in writing. The existence of such a power to abrogate is strong evidence negating the existence of a gen-

eral scheme of development: See Baederwood, Inc. v. Moyer, supra. Not only, then, did plaintiffs' deeds contain no covenant that the remainder of the tract would be restricted as to the character of its development, but each plaintiff could see from examining his own deed that at his absolute discretion the grantor could release his neighbor's property from the "residential only" restrictions.

Finally, there is no evidence in the record to show that the grantor indicated to the grantees that the entire tract would be devoted to restricted residential purposes. Plaintiff Luba testified that it was his "understanding that it was to be (a) residential area". This is not enough to meet the requirement that grantor made this known to the grantee.

Because of the nonexistence of a general scheme at the time the tract was platted and lots first sold, the existence of 9 unrestricted deeds, the absence of any covenants made by the grantor, the clear language of the deeds imposing a burden only on the grantees, the absence of any evidence of disclosure of purpose by the grantor to restrict his remaining land by any means, the absence of any notice of restrictions on the map of October 7, 1939, and, furthermore, in the light of the strong policy against the implication of restrictive covenants, it is apparent that the plaintiffs cannot sustain the necessary burden of proving a general scheme and restrictions arising therefrom by clear and definite evidence.

Plaintiffs also ask us "to require defendants to act in accordance with the Sub-Division Ordinance of Derry Township, Dauphin County, Pennsylvania". This facet of plaintiffs' prayer was not pursued. It is not mentioned or referred to by plaintiffs in their memorandum of law submitted in support of their requests for findings of fact and conclusions of law. The reason for the abandonment of this aspect of plain-

tiffs' complaint is apparent. The Land Subdivision Regulations of Derry Township became effective on November 30, 1957. Article III, sec. 300(b) of the ordinance provides that "No lot in a subdivision may be sold and no building may be erected in a subdivision unless and until a subdivision plan has been approved and recorded. . . ." The Hess plan was dated October 7, 1939, and the circumstances surrounding it were discussed above. Accordingly, the plan cannot be considered as a subdivision of the township.

Since we have determined that plaintiffs are not entitled to a restraining order and that the building permits issued are valid, plaintiffs are not entitled to the issuance of a mandatory injunction against the defendant, John J. Lepperd, Building Inspector of Derry Township directing that he withdraw the building permits issued to defendants, J. C. Hess Realty Corporation and Hamaker & Associates.

From the findings of fact referred to above the chancellor makes the following

### CONCLUSIONS OF LAW

1. The parties are properly before the court and the court has jurisdiction of the parties and the subject matter.

2. The land now equitably owned by the J. C. Hess Realty Corporation and Hamaker & Associates, is not restricted to development as a residential subdivision.

3. The land now equitably owned by the J. C. Hess Realty Corporation and Hamaker & Associates, can be utilized for the intended purposes of a shopping center and automobile agency and garage.

4. The Hess Plan referred to above is not a subdivision of Derry Township, Dauphin County, Pa.

5. Plaintiffs are not entitled to equitable relief.

6. The costs of proceeding shall be paid by plaintiffs.

14

And now, October 21, 1968, it is hereby ordered, adjudged and decreed that plaintiffs' complaint in equity be dismissed. The prothonotary is directed to enter this decree nisi and to notify the parties to these proceedings or their counsel forthwith. If no exceptions are filed within 20 days after the entry of this decree, a final decree will be entered as a matter of course.

Costs to be paid by the plaintiffs.