Cities Service Oil Co. v. Union Real Estate Co.

**2**

*James Craig Kuhn, Jr.,* for plaintiffs.

*J. N. Poffinberger, Jr., C. M. Grimstad* and *David R. Levin,* for defendants.

BROSKY, J., July 9, 1964. — On October 18, 1962, plaintiffs, the Cities Service Oil Company, Charles Birosack, and Charles J. Curry, filed a complaint in equity seeking to have defendants, Union Real Estate Company and Joseph Horne Company, enjoined from maintaining the Horne's Auto Center in the East Hills Shopping Center in Penn Hills Township, Allegheny County, Pa., and to have them pay damages for the losses caused to the plaintiffs by reason of the construction of the Horne's Auto Center in violation of the provisions in the leases to Cities Service Oil Company of two service-station properties in the East Hills Shopping Center. At the hearing upon plaintiff's petition for a preliminary injunction, this court refused to act without a full hearing in the matter. Thereafter preliminary objections to the complaint were filed by the defendants and dismissed. Testimony in full having

been heard in open court in October, 1963, the cause is now before us for final disposition.

In the interim the parties have by stipulation set forth certain facts in which there is no disagreement. They are as follows:

1. Plaintiff, Cities Service Oil Company ("Cities Service (Del.)"), is a Delaware corporation having its principal office in Tulsa, Oklahoma, and an office for the transaction of business at 2350 Noblestown Road, Pittsburgh 5, Pa. Its business includes the refining, manufacturing and distribution, for resale by gasoline service station operators, of petroleum products and tires, batteries and accessories.

2. Plaintiff, Charles Birosack ("Birosack"), is an individual residing in Allegheny County, Pa., and is the operator of the "Eastwood" gasoline service station located on Robinson Boulevard near its intersection with Frankstown Road, in the Township of Penn Hills, Allegheny County, Pa., under a sublease from plaintiff Cities Service (Del.).

3. Plaintiff, Charles J. Curry ("Curry"), is an individual residing in Allegheny County, Pennsylvania, and is the operator of "Curry's" gasoline service station located at 8900 Frankstown Road, in the City of Pittsburgh, Allegheny County, Pa., under a sublease from plaintiff, Cities Service (Del.).

4. Defendant Union Real Estate Company ("Union"), is a Pennsylvania corporation having its principal place of business in the City of Pittsburgh, Allegheny County, Pa.

5. Defendant, Joseph Horne Company ("Horne's"), is a Pennsylvania corporation having its principal place of business in the City of Pittsburgh, Allegheny County, Pa., which operates a department store business with its main store in downtown Pittsburgh and other stores at suburban shopping centers.

6. In July 1955, White & Cunningham, a partnership

4

composed of W. J. White, Jr. and Theodore W. Cunningham, had title to the sites of what subsequently became the Eastwood and Curry's gasoline service stations and also the site of what subsequently became East Hills Shopping Center. Both gasoline service station sites are adjacent to the site of East Hill Shopping Center.

7. By two leases dated July 18, 1955, White and Cunningham leased the gasoline service stations involved and their sites to Cities Service Oil Company, a Pennsylvania corporation ("Cities Service (Pa.)"). Both leases are on printed forms of the lessee, Cities Service (Pa.).

8. Each of the leases is for a term of 20 years beginning upon White and Cunningham's completion of gasoline service station facilities to the satisfaction of Cities Service (Pa.), the lessee. In addition, the leases grant to Cities Service (Pa.) options for four successive renewals of the leases for additional periods of five years each, and the right of first refusal in the event that the lessor receives a bona fide offer for purchase of the demised premises.

9. Plaintiff, Cities Service (Del.), is now the lessee of the two gasoline service stations and their sites by assignment from Cities Service Oil Company (Pa.), the original lessee.

10. Each of the leases contains the following provision as paragraph 15 thereof:

"15. Landlord agrees that during the original and extended period hereof and in the event the Tenant or its nominee shall purchase the demised premises it will not use as a gasoline service station, nor will it lease or convey without prohibiting such use, or the storage or handling of petroleum products, tires, tubes and automotive accessories usually sold at a gasolene service station, any premises leased, controlled or owned by Landlord, directly or indirectly within 1500 feet of the

demised premises or within the proposed shopping center located on the said 52.2 acre tract. In the event the Tenant or its nominee acquired title to the demised premises, this covenant shall survive the closing of title and shall be deemed to bind the land to which it relates."

11. The leases were recorded on August 31, 1955, in the Recorder's Office of Allegheny County, Pa., in Deed Book, vol. 3408, pp. 76 and 88, respectively.

12. White & Cunningham organized a Pennsylvania corporation known as East Crossroads Center, Inc. ("Crossroads"), of which Messrs. White and Cunningham were president and secretary, respectively, and they deeded to Crossroads the land upon which East Hills Shopping Center was to be constructed.

13. By lease dated May 21, 1958, Horne's leased from Crossroads a two-story department store building containing 148,400 square feet of floor area, to be constructed by Crossroads in East Hills Shopping Center on a 47-acre tract fronting on the western side of Robinson Boulevard and the southerly side of Frankstown Road near their intersection. In the lease, Crossroads also agreed to construct "the entire regional shopping center containing at least 50 stores having a total area of at least 400,000 square feet (and) a parking area having a minimum capacity of at least 2,500 automobiles."

14. A store room, identified as Store Room A-2, was built as part of East Hills Shopping Center according to plans prepared for an auto supply company which did not enter into occupancy of the space. Store Room A-2 contained approximately 7,600 square feet of floor area and had a double-width overhead "drive-in" door for automobiles, a "battery room" and a "service room."

15. In the year 1959, Mellon National Bank and Trust Company was mortgagee in possession of the land and buildings occupied by the two Cities Service

gasoline service stations under the leases which are the subject of this proceeding. Prior to March, 1960, Union became managing agent for the successor mortgagee in possession of the two gasoline service stations and their sites and for new owners of the adjoining East Hills Shopping Center and its site.

16. East Hills Shopping Center, including the Horne's department store building, opened for business in March, 1960.

17. Since September, 1960, Horne's has been engaged through a concessionaire in the sale of tires and other auto accessories at its store in East Hills Shopping Center. In addition, Horne's maintained facilities in said center for the installation of tires and the performance of other automotive services. Until the spring of 1962, such facilities were located and services performed in Store Room A-2.

18. Curry and Birosack knew of the existence of the Horne's department store building in East Hills Shopping Center. Birosack knew of the operation of Horne's automotive facilities in Store Room A-2 in the latter part of 1961.

19. By agreement dated October 23, 1961, with Union, Cities Service (Del.) amended the two service station leases and consented to "the establishment and operation of a retail establishment operated by The Firestone Tire and Rubber Company selling any merchandise and automobile services sold by other similar Firestone stores" with the exception of gasoline, diesel fuel, other motor fuel, canned oil, and the lubricating of or changing oil in motor vehicles, in East Hills Shopping Center. That agreement was recorded. It contained the following provision (paragraph 1):

"Except as so specifically modified by this paragraph, paragraph 15 of the original leases shall remain in full force and effect and Tenant reserves its right to seek an injunction and/or damages against Landlord and the

Firestone Tire and Ruber Company in the event of any violation of said paragraph as hereby modified."

20. Pursuant to said agreement, Firestone Tire and Rubber Company ("Firestone") leased premises in East Hills Shopping Center and commenced operation of an automotive service center in the spring of 1962.

21. Prior to the opening of the Firestone store, Union, as agent, constructed a building (Horne's Auto Center) to serve as a new location for the Horne's automotive department. The Horne's automotive department moved to the Horne's Auto Center building shortly before or after the opening of the Firestone store.

22. The Firestone facilities consist of six bays, a storage area and a display-and-sales-room, having a total indoor floor area of approximately 9,700 square feet. Each bay is equipped with a permanent automobile lift rack. Two bays are used for tire work, one for wheel alignment and "front end" work, and three for state inspection and other automotive services.

23. The Horne's Auto Center facilities consist of three bays, a storage area and a display-and-sales-room, having a total indoor floor area of approximately 1,700 square feet. There are no facilities for selling motor fuels or for lubricating vehicles. There is one lifting device, of the low-rise, portable variety, used in tire work.

24. The Firestone store carries both automotive and general merchandise, and provides automotive services. Of the total dollar volume of business at the Firestone Store, approximately 20 percent is derived from automotive service, 40 percent from the sale of tires, 4 percent from the sale of automotive supplies and 36 percent from the sale of general merchandise.

Based upon the testimony and exhibits we make the additional

FINDINGS OF FACT

1. The lease agreement of August 23, 1956, between

East Crossroads Center, Inc. and the Western Auto Supply Company, the Missouri corporation to which stipulated fact no. 14 refers, provided as follows:

"Use. 3. The demised premises shall be used for the display, sale, storage, installation and servicing of automobile accessories, tires, batteries, radios, oil, sporting goods, anti-freeze solutions and other goods wares and merchandise."

2. The lease agreement of May 21, 1958 between East Crossroads Center, Inc. and the Joseph Horne Company provides, page 11:

"f. The lessee further covenants not to assign this lease or sublet said premises to any individual, partnership or corporation carrying on any trade or business which would render Lessor in default to any other lessee in this Center which said lease or leases are valid and subsistent at the time of said assignment or subletting . . ."

3. Also in the said lease, the following lessor's covenant is set forth on page 13:

"(c) Lessor covenants that it will not lease without the written consent of Lessee any space to or for (1) a furniture store or (2) an appliance store (3) a floor covering store, or (4) what is commonly known as a discount house, and will use its best efforts to prevent any store in their shopping center, other than Lessee, to sell furniture, appliances and floor coverings, except as to such items as other tenants customarily have sold incidental to their business."

4. Both of the Cities Service's leases were valid and subsistent at the time of the lease to Horne's and in fact were of record in the Recorder's Office of Allegheny County.

5. Cities Service's said leases stated that the demise was "for use as a gasoline service station and purposes incidental thereto."

6. Plaintiffs' gasoline service stations at East Hills Shopping Center opened for business in 1957; Horne's opened for business in 1960.

7. Testimony shows that Cities Service gasoline service stations carry a complete line of mufflers, tail pieces, auto wax, polishes, tires, batteries, spark plugs, radiator hoses, radiator clamps, points, condensers, and all items pertaining to normal servicing as compared to "heavy" repairs. They normally do State inspection work too.

8. Cities Service in modifying its leases to permit Union to demise part of the Shopping Center to Firestone, restricted this particular Firestone Store to handling only what that company's other stores handled; this was, by observation and experience, a known quantity at the time of the amendment.

9. Cities Service's compensation for the modification was the enlargement by Union of one of the service stations and giving it access to and from the shopping center proper, plus a payment of $10,000.

10. Firestone, in connection with its sale of tires, installs or repairs them, services brakes and does wheel balancing and alignment; it also does State inspection work, installs tailpipes, mufflers, radiator hoses, fan belts, seat belts and headlamps; it does not install radios, antennae or heaters; it does sell seat cushions, seat belts, chains, tube repair kits, battery cables and chargers, batteries and spark plugs. It does not do tune-up work; the equipment for such work would eliminate the State inspection work in that there would be less area therefor than the State requires.

11. There is an industrial tie between Firestone and Cities Service, the latter's tires being made, to its specifications and with its brand name thereon, by Firestone.

12. Firestone's tires are similar in specification and in price structure to those of Cities Service.

13. While Horne's automobile accessories department was located in Store Room A-2, its automobile service work was restricted to that pertinent to installing items bought in that store. It did not do muffler service, front end alignment, brake service, shock absorber service or tune-ups.

14. Prior to February, 1963, when the new Horne's Auto Center was opened in the East Hills Shopping Center, even the downtown store had only a small department displaying tires and accessories, which were installed for the customers by an independent garage man who also, in Store Room A-2, did such installation work in the shopping center. This service was advertised merely by a card on the overhead garage door which stated: "Tires purchased at Horne's installed here."

15. Even after the new building for the Horne's Auto Center had been completed the sign indicating its use was not put up; at that same time the formerly independent garage man had moved from the McCann Building in the downtown area to Seventh Street where he could carry on the additional services such as those now given in this Shopping Center, and Horne's was trying to decide whether to permit use of the name "Horne's Auto Center" for this "leased department."

16. When erected, the sign on the new Horne's Auto Center in the East Hills Shopping Center advertised "Tires, Auto Accessories, Muffler Service, Front End Alignment, Brake Service, Batteries, Shock Absorbers." It does not sell oil or gasoline; it does not do lubrication work or State inspections. However, like the Cities Service station in this Shopping Center, the new Horne's Auto Center does do "minor" tune-ups.

17. Horne's Kelly-Springfield tires are quality tires comparable to those of Firestone and Cities Service, and, price-wise, are competitive with those of the other two.

18. Items which are on display in the Horne's Auto Center are also on display in the department store building in the East Hills Shopping Center.

19. Although the present Horne's Auto Center is the smaller building that its sublessee desired, it is less convenient than Store Room A-2 in that communication with customers in the store is less good; to get to the Auto Center from the department store building, the customer must drive to the other end of the shopping center.

20. The rent for the new Horne's Auto Center is $400 less per month than for the Store Room A-2.

21. Curry's Service Station at the intersection of Robinson Boulevard and Frankstown Road is below the grade of the East Hills Shopping Center, has three bays and two hydraulic lifts; it does State inspection work and tune-up work of a more minor type than that of Birosack's Eastwood Service Staion for which Birosack purchased a Sunscope machine in order to provide the best possible tune-up job.

22. Curry's service station during 1963 to the time of the trial had suffered no loss in gallons of gasoline sold; plaintiff Curry had a "glass program" in which a customer received a free glass for each eight gallons of gasoline he bought.

23. Plaintiff Curry's gross receipts for 1962 were $108,249.47 as against $124,272.50 in 1961; the difference in gross profits, however, was approximately $1,000.

24. Birosack's Service Station, at the time Cities Service amended its leases to agree to a Firestone Store in this shopping center, had only two bays; it was enlarged to three bays with access to and from the shopping center; this station thereafter had two hydraulic lifts, the second having been installed by Cities Service.

25. From 1960 through 1962, Birosack's gross receipts went from $106,000 to $110,000 and back to $98,000; the gross profits went from $22,962 to $23,492 and back to $21,000.

26. Tune-up work is a major factor in a service station; satisfied customers send others to the same place for a tune-up; also it provides the occasion for sale of accessories and automotive equipment such as batteries, fan belts, thermostats, etc.

27. Birosack testified that he could think of at least ten former customers whose tires had been bought at the new Horne's Auto Center and who now only buy gasoline and oil from him.

28. The recognized ratio between the sale of tires, batteries and accessories and gasoline is $25 per thousand gallons of gasoline; for service stations in a shopping center the ratio is expected to be higher in that drivers save time by having their cars serviced while they are shopping; such a combination leads to sale of more automobile accessories.

29. Within the East Hills Shopping Center there are other stores which sell automobile accessories—the chain grocery stores, the Murphy's and Kresge's Stores, the chain hardware store and some others; however, such stores do not install and "service" these items and therefore do not draw that type of work from plaintiffs' gasoline service stations.

30. Within a one-mile radius of the East Hills Shopping Center there are approximately 14 gasoline service stations and 10 automobile repair garages which do not sell gasoline and oil; these, however, are beyond the land owned and controlled by White and Cunningham, the original lessor to Cities Service.

DISCUSSION

The parties have also stipulated the issues to be adjudicated herein, as follows:

"(1) Are the provisions of Paragraph 15 of Cities Service Oil Company's leases enforceable and, if so, are they binding (a) on Union Real Estate Company and/or (b) on Joseph Horne Company?

"(2) Has a breach of Paragraph 15 been proved?

"(3) Have plaintiffs waived Paragraph 15 (a) by consenting to the establishment and operation of the Firestone Tire and Rubber Company Store in the shopping center and/or (b) by not objecting to commercial activities, of other tenants in the shopping center, covered by Paragraph 15?

"(4) Are plaintiffs guilty of laches?

"(5) Under all the circumstances, would it be equitable to enforce Paragraph 15?

"(6) Are plaintiffs entitled to relief against either or both defendants (a) by injunctive process and/or (b) by an accounting and damages?"

In respect to the first of these issues Union denies the enforceability of paragraph 15 in that (1) none of the parties in the present action were parties to the lease containing said paragraph, and (2) the provisions of paragraph 15 were intended to bind the land only if Cities Service purchased the land on which these two gasoline service stations are situated.

Union's denial of the enforceability of said paragraph on the ground that the parties to the action are not those to the leases is belied both by the history of this shopping center and by the fact that Union apparently felt, in respect to a Firestone store, that it was necessary to obtain from Cities Service (Del.) a modification of its leases and to compensate Cities Service therefor.

The evidence shows that White and Cunningham, a partnership, were the planners of this whole project and acquired all the land necessary thereto; that in order to finance the purchase of property and the construction of the buildings for these gasoline service

stations and for the shopping center, White and Cunningham borrowed construction funds from the Mellon National Bank and Trust Company; that the leases not only for these gasoline service stations but for shopping center buildings were executed prior to the construction of the buildings; that White and Cunningham, after executing leases with Cities Service (Pa.) formed a corporation, named East Crossroads Center, Inc., of which they were respectively, president and secretary; that White and Cunningham, the partnership, thereafter separated the previously whole tract into two sections by conveying a part thereof to their new corporation East Crossroads Center, Inc.; that title to the portion of land on which the gasoline service stations are situated remained in White and Cunningham, the title to the other portion being placed in the new corporation which, despite the new name, continued White and Cunningham's general plans for the use of both parts of the property and executed a lease with Horne's; that East Crossroads Center, Inc. ran into financial difficulty and the Mellon National Bank and Trust Company bought that part of the property at sheriff's sale; that thereafter the said Bank sold its mortgage to the portion on which the gasoline service stations are situated to another corporation which since has foreclosed and sold it at sheriff's sale; that the shopping center proper now is held in the name East Hills Center, Inc. with Union as its manager and agent therefor.

In its contention that the present parties are not the lease parties, Union does not rely upon the foreclosures and divesting of the leases; it merely contends that the gasoline station leases were made with Cities Service (Pa.), rather than Cities Service (Del.) as to which Birosack and Curry are sublessees, and that neither White and Cunningham nor East Crossroads Center, Inc. now have any interest in these properties. The record, however, does show that both tracts came from

the same source; White and Cunningham, a partnership; that the shopping center tract was owned by the said partnership at the time the leases to Cities Service were executed; that the lease by East Crossroads Center, Inc. to Horne's contained not only a clause subjecting said lease to previous commitments set forth in subsisting leases but also a clause by which Horne's would be protected from competition in certain kinds of merchandise; that Union, as manager for the present owners of the shopping center proper, also apparently has authority to make improvements on the gasoline service station portions of the original tract, and that Union has in its possession records and leases from its predecessor, East Crossroads Center, Inc. We, therefore, find no merit in the contention that there has been such a change in parties as to circumvent this action to enforce a provision in the Cities Service leases.

Union's contention that paragraph 15 would not become a covenant binding the land unless and until Cities Service purchased the land of its leased gasoline stations, fits hand and glove with Horne's contentions that said paragraph is a restraint on the owners' free and full enjoyment of their property and that (1) nothing can be deemed a violation that disregards the paragraph's express words, (2) it cannot be enlarged by implication, (3) Cities Service (Pa.) wrote the leases and paragraph 15 therein and they must be construed against Cities Service in favor of the owner: Jones v. Park Lane for Convalescents, Inc., 384 Pa. 268; (4) that for enforceability the meaning of the covenant must be certain, especially where it is to be applied to a third party: Henry v. Eves, 306 Pa. 250, 257, and (5) if a restrictive covenant is ambiguous, a court of equity will not enforce it: Kessler v. Lower Merion Township School District, 346 Pa. 305. See also Siciliano v. Misler, 399 Pa. 406.

There is in the case at bar, however, evidence which nullifies, in this instance, the legal maxims thus relied upon by defendants. Three leases executed before construction of these buildings clearly show the intention that competition between lessees was to be sufficiently limited so that each lessee would be able to operate with a profit. Thus the Cities Service leases confined the sublessees' operations to use as gasoline service stations and purposes incidental thereto; the subsequently cancelled lease to the Western Auto Supply Company restricted the latter to the display, sale, storage, installation and servicing of automobile accessories and other items, and in the Horne's lease the latter covenanted not to assign or sublet to any individual, partnership or corporation carrying on a trade which would render the lessor in default to any other lessee.

From these three early leases there can be no doubt that White and Cunningham foresaw the possibility that intra-shopping center competition might culminate in losses to tenants and therefore losses of tenants. From these leases the limits of the planned restraint of competition is ascertainable: in the case of Cities Service, competition by other tenants in working on motor vehicles was to be limited to work related to items purchased in their stores, or, as stated in the modification of the Cities Service leases, in the case of Firestone, work normally done in similar Firestone stores. Under these circumstances the fact that Cities Service (Pa.) used its own lease forms does not constitute a reason to deny the right of Cities Service (Del.) as assignee of these leases, to enforce paragraph 15 to such extent as conforms with the general plan for a limited restraint of competition. Nor is Horne's argument that paragraph 15 creates a monopoly for forty years a reason for upsetting the protection of tenants' profits clearly intended by the stated restrictions upon the operations of the various tenants. Horne's own lease creates a

similar monopoly as to furniture, appliances and floor coverings.

Horne's admits that notwithstanding the acknowledged policy of the law in favor of freedom of competition, the courts will under certain circumstances give effect to private agreements restraining trade, or restraining the use of land. For the following reasons it is our opinion that paragraph 15 in the Cities Service leases, to the extent hereinbefore stated, is presently enforceable against Union, the agent of the present owners who are receiving rents under the original leases:

"(1) The lessor's covenants in the leases to Cities Service, and the covenant in Horne's lease, were inducements to these companies to become part of a regional shopping center in which there would be many other stores and their profits would clearly depend on a certain amount of restraint of competition. These restrictions were imposed for the benefit of both the lessees, who would gain in profits, and the lessors, whose contingent rent depended upon the volume of gross sales. The exhibits indicate that such restrictions were part of a general plan for the shopping center and Union's action, in having Cities Service modify its lease to permit the leasing of property to the Firestone Tire and Rubber Company, construed Paragraph 15 as a valid restraint of competition within the shopping center. A subsequent breach thereof justifies an injunction: Sandyford Park Civic Association v. Lunnemann, 404 Pa. 32.

"(2) Although the Firestone lease is not in evidence the modification of its leases by Cities Service limited the Firestone store in this center to selling merchandise and automobile services sold by similar Firestone stores with the exception of gasoline, diesel fuels, other enumerated items, and the lubricating or changing of oils in motor vehicles. 'The manner in which restrictions

limiting the use of land is created may be by reservation in the deed, by a condition annexed to a grant, by a covenant, or even by parol agreement of the grantees': McCloskey v. Kirk, 243 Pa. 319; J. C. Grille Inc. Liquor License case, 181 Pa. Superior Ct. 456, 463. In the case at bar the plan for restricting competition was effectuated by provisions in the leases.

"(3) Restrictive covenants although in restraint of trade are enforceable if reasonable: Restatement 3 Contracts, §516; Harris Calorific Co. v. Marra, 345 Pa. 464. An agreement in restraint of trade which is limited in either space or time is prima facie good: Ross v. Houck, 184 Pa. Superior Ct. 448, 450. Paragraph 15 in the Cities Service leases, and the covenant set forth in the Horne's lease in respect to furniture and other items, apply only to the area in this shopping center and for such a time (unless Cities Service purchases its presently leased premises) as the leases and renewals thereunder extends. In view of the protective result intended to benefit the various lessees in this shopping center, Paragraph 15 is a reasonable restriction when conformed with the general plan for the shopping center, and was intended to immediately bind the Landlord and through him the other tenants."

A breach of paragraph 15 has, in our opinion, been proved. Defendants stress the fact that plaintiffs knew, at the time the Cities Service leases were executed, that Horne's had an automotive department in its downtown store and that Horne's would be one of the tenants in the shopping center. Testimony for defendants succinctly shows, however, that never until the opening of the new Horne's Auto Center, had Horne's done any more than install and service items bought in its store. Thus plaintiffs could not reasonably be expected to have known in 1955 that Horne's competition would be any greater than the sales, display and installation and servicing type spelled out in the Western Auto Supply

lease and carried out in Firestone stores. In fact, so long as Horne's Auto Center was in Store Room A-2, it remained within the limitations set forth in the cancelled lease to Western Auto Supply Company, i.e., display, sales, storage, installation and servicing of automobile accessories, tires, batteries, etc., and with the "selling of merchandise and automobile services" permitted to Firestone by Cities Service's modifications of its leases. The new auto center, however, went beyond this limitation when it began doing general repair and tune-up work on motor vehicles. This additional activity clearly constituted a breach of the general plan for a protective, limited restraint of competition.

Plaintiffs' consent to the establishment and operation of the Firestone store in this shopping center patently did not constitute a waiver by Cities Service of paragraph 15 in its leases. In Brown v. Pittsburgh, 409 Pa. at 360-361, the court stated: "A waiver in law is the act of intentionally relinquishing or abandoning some known right, claim or privilege. See Bell's Estate, 139 Pa. Superior Ct. 11; and, Sudnick v. Home Friendly Insurance Co., 149 Pa. Superior Ct. 145. To constitute a waiver of legal right, there must be a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it: Kahn v. Bancamerica-Blair Corp., 327 Pa. 209, and Cole v. Philadelphia Co., 345 Pa. 315. Waiver is essentially a matter of intention. It may be express or implied. '[I]n the absence of an express agreement, a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled, *to his prejudice*, into the honest belief that such waiver was intended or consented to,': Atlantic Ref. Co. v. Wyoming Nat. Bank, 356 Pa. 226, at 236-237, reaffirming what was said in Dougherty v. Thomas, 313 Pa. 287. In short, the doctrine of implied

waiver in Pennsylvania applies only to situations involving circumstances equivalent to an estoppel, and the person claiming the waiver to prevail must show *that he was misled and prejudiced thereby*: Frazee v. Morris, 155 Pa. Superior Ct. 320, and Barr v. Deiter, 190 Pa. Superior Ct. 454."

In the present instance the modification of the leases limited the Firestone store in this shopping center to the operations in similar Firestone stores; it also reserved the right to enjoin and seek damages from the landlord and Firestone if the latter violated any part of paragraph 15 not specifically excepted in the modification. Neither a waiver of plaintiffs' rights under paragraph 15, nor a basis upon which the defendants could have been misled by this modification, can be found in the modification as stated.

The fourth issue stated by the parties is whether plaintiffs were guilty of laches in that (1) all three plaintiffs knew in 1955 that Horne's would be a tenant in the shopping center and would have an automotive department selling tires and accessories, (2) one of the plaintiffs, by the latter part of 1961, knew that in Store Room A-2, items purchased in Horne's automotive department were installed and serviced, and (3) quite a number of other tenants in the shopping center handled items for automobiles, many of them the same items as those for sale at plaintiffs' gasoline service stations. We have already pointed out that Horne's installation and servicing of items bought in its store was within the general plan concerning restraint of competition but that the addition of the repair and tune-up work, advertised on the sign for the new auto center, constituted an increase in competition and in fact, because Horne's now had two automotive sales and display departments, doubled Horne's prospects of selling automobile accessories and parts. Plaintiffs did not and could not have known of this violation until Horne's made its decision

to do this in or about February, 1962, and in fact did not ascertain this increase in competition until the sign was attached to the new building.

In respect to competition from the "Kresge's," "Murphy's," and other stores in the shopping center, the competition only lay in the sales field; these stores neither installed nor serviced items bought from them. Thus, their activities were within the planned limitation of competition.

The parties have divided into two issues the questions whether it would be equitable to enforce paragraph 15 and whether plaintiffs are entitled to injunctive relief and damages. From the foregoing paragraphs it is obvious that it would be equitable to enforce paragraph 15 in respect to any activities beyond the sale, display, installation and servicing of automobile equipment purchased in the Horne's store. Such increase in competition is a violation of the original general plan to benefit the tenants and landlord by protecting the profits of the various lessees as well as the rental income of the owners of the shopping center.

Under the Cities Service leases the plaintiffs unquestionably have a right to enjoin Union, the representative and agent of the East Hills Center, Inc., from permitting the Horne's Auto Center to violate the general plan for restricting competition among lessees. Plaintiffs' right against Horne's on the other hand are secondary; Horne's obligation under its lease being only to Union as agent of the present owners. It is our opinion, however, that under Pennsylvania Rules of Civil Procedure 2229 (b) and 1508, Horne's is properly joined as a party and that the injunction may be applied to both defendants.

In respect to damages on the other hand we find that there is insufficient evidence from which to determine a proper compensation for losses suffered by reason of defendant's violation of the plan for restricting compe-

tition between lessees. Curry and Birosack did adduce evidence that since the new Horne's Auto Center opened, their sales and profits have been reduced. Other evidence shows, however, that plaintiffs have intensive competition from gasoline stations and repair garages beyond the boundaries of the land to which paragraph 15 applies. We see no way by which to determine how much of plaintiffs' losses were actually caused by the new Horne's Auto Center as against losses caused by "outside" competition. We, therefore, conclude that plaintiffs have failed to prove the amount of damages to which they are entitled and accordingly find that we can justly grant only the injunctive relief which will terminate future losses from intrashopping center sources.

### Conclusions of Law

1. The court has jurisdiction over the parties and the subject matter.

2. Paragraph 15 in the Cities Service leases must be construed to conform with the general plan for restricting competition within the East Hills Shopping Center as discernible in other early leases such as the cancelled lease to the Western Auto Supply Company and the lease to Horne's.

3. The general plan for restricting intrashopping center competition consists of permitting one lessee, such as Cities Service, the full scope of the business it customarily conducts, and limiting other lessees which, in the ordinary course of business handle some of the same items, to the display, sale, installation and servicing of such items as are bought in their stores.

4. As conformed to the said general plan, paragraph 15 is a reasonable restraint of trade.

5. Defendant Union by reason of constructing and leasing a new building to Horne's, and the latter by subletting the said new building, in violation of its lease covenant, to an individual who set up therein not only

a second display and sales room but also a repair and tune-up shop in competition with Cities Service, have violated the general plan for restricting intrashopping center competition.

6. Paragraph 15 in the Cities Service leases should be enforced against Union and Horne's by injunction.

7. Plaintiffs having failed to prove the amount of losses incurred by them as a result of the violation by Union and Horne's, damages cannot be granted.

DECREE NISI

And now, July 9, 1964, it is ordered, adjudged and decreed that:

1. The Union Real Estate Company and the Joseph Horne Company be enjoined from maintaining the new Horne's Auto Center in the East Hills Shopping Center for any use except that of installing and servicing items purchased in the automobile department within the department store building leased by the Joseph Horne Company in the said shopping center, and

2. Costs hereof be paid by the defendants, the Union Real Estate Company and the Joseph Horne Company.